## Short, Appellant, v. Upper Moreland Township School District Board et al.

Argued December 11, 1934.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

228

*Warren H. Cogswell,* for appellant.

*Elmer L. Menges,* for appellee, was not present and filed no brief.

OPINION BY CUNNINGHAM, J., March 13, 1935:

Plaintiff, a resident of Upper Moreland Township, Montgomery County, is a mail clerk in the employ of the United States Government. The School District of Upper Moreland Township, a district of the fourth class, is authorized to levy a per capita tax of not less than one dollar nor more than five dollars on each resident of the district over twenty-one. This provision is contained in Section 542 of the Act of May 18, 1911, P. L. 309, as finally amended by the Act of May 11, 1921, P. L. 508, Section 4, which reads as follows:

"Each resident or inhabitant, over twenty-one years of age, in every school district of the second, third, and fourth classes in this Commonwealth, which shall levy such tax, shall annually pay for the use of the school district in which he or she is a resident or inhabitant, a per capita tax of not less than one dollar nor more than five dollars, as may be assessed by the local school district."

Under this act, the school district in the year 1930 levied a tax of five dollars on each resident thereof over twenty-one years of age. A similar levy was made in the year 1931, while in the year 1932 the tax was fixed at three dollars. Claiming that he is exempt from the payment of this tax by reason of his

federal employment, plaintiff filed this bill in equity to enjoin its collection. His bill was dismissed by the court below; hence this appeal. A previous attempt by the plaintiff to obtain the same relief by a rule, upon the law side of the court below, to show cause, etc., is not involved in the present proceeding. See Short v. Board of Sch. Dist., 108 Pa. Superior Ct. 503, 165 A. 669.

There are no factual complications. Appellant is admittedly a resident of the school district. It is conceded also that the tax is, as it purports to be, a head tax levied without discrimination on all residents of the district. The sole question is whether appellant, "as a clerk in the Willow Grove post-office," is exempt from its operation. In support of his claim to exemption, he asserts the familiar principle that, in the language of his brief, "State governments cannot lay a tax upon the constitutional means employed by the government of the Union to execute its sovereign powers." He maintains that as a mail clerk he is such a means; that the tax is laid directly on him, and so upon the means; and that consequently it falls within the exemption afforded by the rule.

The rule itself, as a general proposition, cannot be challenged; but the question here involved is whether it is applicable to the facts at bar. Appellant has neither cited nor have we found a case in which the precise point has been decided. In ex parte White, 228 Fed. 88, a poll tax levied by New Hampshire on a United States army officer was challenged, but that case went off on the ground that the officer was not an inhabitant, within the meaning of the applicable statute, and therefore did not decide the constitutional question. Before reaching a conclusion, therefore, it may be advisable to examine certain cases in which the rule has been invoked, in order to ascertain its practical extent and operation.

230

The leading case is the oft cited one of McCulloch v. Maryland, 4 Wheat. 316. It held that a state stamp tax on bank notes of the United States Bank could not be sustained, and in so holding crystallized the rule now under consideration. In Weston v. Charleston, 2 Peters 449, it was applied to a tax on stock issued for loans made to the federal government; in The Banks v. The Mayor, 7 Wall. 16, to certificates of. indebtedness of the United States issued to creditors of the government for supplies furnished in carrying on the civil war; in Bank v. Supervisors, 7 Wall. 26, to notes of the United States intended to circulate as money; in Farmers and Mechanics Savings Bank of Minneapolis v. Minnesota, 232 U. S. 516, to a tax on the bonds of a territory; and more recently, in Panhandle Oil Co. v. Mississippi, 277 U. S. 218, to a state tax on gasoline sold to the United States. Possibly the closest case, and that chiefly relied upon by appellant, is Dobbins v. Erie County, 16 Peters 434. Here it was held that the captain of a United States revenue cutter could not be assessed for an occupation tax, the tax having been based upon the assessed value of his office. Conversely, it has been held that the federal government cannot tax the salary of a state judicial officer: Collector v. Day, 11 Wall. 113.

On the other hand, the state may tax the real and personal property of a railroad incorporated under state laws, although that railroad is an agent of, as well as a debtor to, the federal government: Thomson v. Railroad, 9 Wall. 579. It may also levy a similar tax although the railroad has been incorporated under the laws of the United States: Railroad v. Peniston, 18 Wall. 5. It may levy a tax on checks of the United States available for immediate use: Hibernia Savings and Loan Society v. San Francisco, 200 U. S. 310. And our own Supreme Court held, in Finley v. The City of Phila., 32 Pa. 381, that the household furniture of

a surgeon in the army of the United States is liable to taxation in the city where he is stationed on duty.

When these cases are analyzed and compared, it seems clear that the rule is intended to exempt from taxation the functions or operations of the United States or its agents when acting as such. It, however, was never intended that it should apply, without exception, to all taxes upon an individual, even though he also happens to be an instrumentality of the federal government. Thus in the McCulloch case, supra, while Chief Justice MARSHALL said: "The states have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operation of the constitutional laws enacted by congress to carry into execution the powers vested in the general government," he added this cautionary note:

"This opinion does not deprive the states of any resources which they originally possessed. It does not extend to a tax paid by the real property of the bank, in common with other real property within the state, nor to a tax imposed on the interest which the citizens of Maryland may hold in this institution, in common with other property of the same description throughout the state. But this is a tax on the operations of the bank, and is, consequently, a tax on the operation of an instrument employed by the government of the Union to carry its powers into execution."

Again, in Railroad v. Peniston, supra, the court said: "In this case the tax is laid upon the property of the railroad company precisely as was the tax complained of in Thompson v. R. R. Co. It is not imposed upon the franchises or the right of the company to exist and perform the functions for which it was brought into being. Nor is it laid upon any act which the company has been authorized to do. It is not the transmission of dispatches, nor the transportation of United States mails, or troops, or munitions

of war that is taxed, but it is exclusively the real and personal property of the agent, taxed in common with all other property in the state of a similar character. It is impossible to maintain that this is an interference with the exercise of any power belonging to the general government, and if it is not, it is prohibited by no constitutional implication." (p. 793)

And in the Finley case, our Supreme Court said: "Here is no tax on the official salary, for that stands in no need of protection from the state, and such taxation might lead to great abuses, and would be in effect a taxation of the federal government. But the officer's household furniture, not within army quarters, stands as much in need of state protection as any other kind of property, or as the property of any other person. What is official about the plaintiff here is his surgical and medical function, and that is not taxed. As an owner of household furniture or other property (not being special instruments of his office), he stands on common ground with other residents and citizens, and is subjected to corresponding burdens and duties."

These decisions, in our opinion, make it clear that appellant is not entitled to immunity from the tax here in question. Unlike the Dobbins case, it is not a tax directly upon his salary as a postal clerk, nor one upon his occupation as such. If it were, it could be said, as it was in that case, that it would represent a direct burden upon his official function. Nor does this law hinder him in the performance of his duties. Appellant, in reality, appears in two distinct capacities. In one, he is a servant of the United States, concededly engaged in carrying out its delegated powers; as such, his operations cannot be interfered with, his duties impaired, or his stated salary diminished. But he is also a private citizen of this state, entitled to its protection, and therefore obligated to give it corresponding support. In the latter capacity, we can see no reason

why he should not, as a citizen, pay the flat tax assessed without discrimination against all residents of the taxing district.

Nor is there any merit in the contention that while the tax is not directly upon him in his official capacity, it has an indirect effect, since it may be that some portion of his salary as a postal clerk must be used to pay the tax. This contention has been definitely rejected by the Supreme Court of the United States. Thus in Alward v. Johnson, 282 U. S. 509, the plaintiff was engaged in operating an automobile line between points in California under a mail carrier's contract. The state levied a tax on vehicles used by common carriers; it was measured by a certain percentage of the gross receipts derived from their operation. It was held that plaintiff was entitled to no exemption from the tax, as it was not levied upon the contract for the carriage of the mail, even though a great portion of his receipts represented compensation for such carriage. The burden laid upon his property was held to affect the operations of the federal government too remotely to justify the application of the rule invoked.

Similarly, in Educational Films Corp. of America v. Ward et al., 282 U. S. 379, a state franchise tax upon a corporation was upheld, although it was measured by the amount of the corporation's net income and although the income of that particular corporation was derived in part from royalties on copyrights granted by the United States. Under previous cases it had been held that patents and copyrights and all income derived therefrom are immune from state taxation, since they are instrumentalities of the federal government. Despite this, however, the franchise tax, measured though it was by income from copyrights, was upheld. In reaching this conclusion, the Supreme Court drew the distinction "between a tax, invalid because laid directly on governmental instrumentalities

or income derived from them, and an excise which is valid because imposed on corporate franchises, even though the corporate property or income which is the measure of the tax embraces tax exempt securities or other income.'' It referred to other forms of tax which have been upheld although the measure of the tax included securities immune from any form of direct taxation, pointing out, among other illustrations, that a state inheritance tax is valid although measured by the value of United States bonds which are transmitted; that an inheritance tax may be levied by a state upon a bequest to the United States, and by the United States on a bequest to a municipality; and that in the same way a state may tax stockholders at the full value of their shares in national banks, although the bank itself owns tax exempt United States bonds.

Its conclusions were thus stated: ''It is said that there is no logical distinction between a tax laid on a proper object of taxation, measured by a subject matter which is immune, and a tax of like amount imposed directly on the latter; but it may be said with greater force that there is a logical and practical distinction between a tax laid directly upon all of any class of government instrumentalities, which the constitution impliedly forbids, and a tax, such as the present, which can in no case have any incidence, unless the taxpayer enjoys a privilege which is a proper object of taxation, and which would not be open to question if its amount were arrived at by any other non-discriminatory method.

''This court, in drawing the line which defines the limits of the powers and immunities of state and national governments, is not intent upon a mechanical application of the rule that government instrumentalities are immune from taxation, regardless of the consequences to the operations of government. The necessity for marking those boundaries grows out of our

constitutional system, under which both the federal and the state governments exercise their authority over one people within the territorial limits of the same state. The purpose is the preservation to each government, within its own sphere, of the freedom to carry on those affairs committed to it by the constitution, without undue interference by the other: McCulloch v. Maryland, supra, p. 405; The Collector v. Day, 11 Wall. 113, 125; Railroad Co. v. Peniston, 18 Wall. 5, 31; South Carolina v. United States, 199 U. S. 437, 461; Flint v. Stone Tracy Co., supra, pp. 154, 172; Metcalf & Eddy v. Mitchell, supra, pp. 523, 524.

"Having in mind the end sought, we cannot say that the rule applied by this court for some seventy years, that a non-discriminatory tax upon corporate franchises is valid, notwithstanding the inclusion of tax exempt property or income in the measure of it, has failed of its purpose, or has worked so badly as to require a departure from it now; or that the present tax, viewed in the light of actualities, imposes any such real or direct burden on the federal government as to call for the application of a different rule." (pp. 391, 392)

If such is the rule, even where the tax is measured in part by the amount of exempt income received, it is unnecessary to labor the point that there is no real interference with a federal instrumentality by the small flat tax here involved. If, in the future, this form of tax should ever be used with a definite intent to cripple an instrumentality of government, either congress or the courts have adequate power to nullify it.

We have, accordingly, arrived at the conclusion that appellant is not entitled to the exemption claimed by him and that his appeal from the action of the court below in denying him the relief sought is without merit.

Decree affirmed at appellant's cost.