## Philadelphia v. Schaller, Appellant.

Argued November 20, 1941. 

Before KELLER, P. J., CUNNINGHAM, BALD-
RIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*Edward I. Cutler,* with him *Michael Francis Doyle,*
for appellant.

*Abraham Wernick,* with him *Abraham L. Shapiro,*
Assistant City Solicitors, and *Francis F. Burch,* City
Solicitor for appellee.

PER CURIAM, March 13, 1942:

The judgment is affirmed.
An opinion will be filed later.

OPINION BY HIRT, J., March 30, 1942:

Throughout the year 1940 defendant lived in the City
of Philadelphia and worked as a marine engineer in
the Philadelphia Navy Yard, a federal area on League
Island, near the city. His employer was the Navy
Department, an instrumentality of the United States,
and his entire income for 1940, amounting to $2,596.73,
was paid from federal funds. This appeal raises the
question of the authority of the city to subject his in-
come for that year to a tax of 1½% thereof, by virtue

of an ordinance approved December 13, 1939: "imposing a tax for general revenue purposes on salaries, wages, commissions and other compensations earned after January 1, 1940, by residents of Philadelphia, and on salaries, wages, commissions and other compensation earned after January 1, 1940, by non-residents of Philadelphia, for work done or services performed or rendered in Philadelphia, ......; requiring the filing of returns and the giving of information by employers and those subject to the said tax; imposing on employers the duty of collecting the tax at source; providing for the administration, collection and enforcement of the said tax; and imposing penalties." The tax on defendant's income was not deducted at the source by the federal agency employing him, but he filed a return and delivered his check to the Receiver of Taxes in the amount of $38.95, being 1½% of his 1940 earnings. Thereafter, on advice of counsel, he stopped payment of the check. Hence, this action in assumpsit. By agreement the case was disposed of in the lower court on undisputed facts on questions of law, resulting in a final judgment against defendant for $40.45. This is the amount of tax with interest but without the addition of any penalty for non-payment.

It is conceded, as it must be, that the broad constitutional question whether a State taxing unit may tax incomes, regardless of the fact that they are derived from federal funds, was removed by the decision of the United States Supreme Court on March 27, 1939 in *Graves v. People of State of New York ex rel. O'Keefe,* 306 U. S. 466, 59 S. Ct. 595. Another basic question is eliminated by the decision of our Supreme Court in *Dole, Appellant v. Philadelphia et al.,* 337, Pa. 375, 11 A. 2d 163 which determines the general constitutionality and validity of the ordinance in question.

The power to enact the ordinance was conferred upon the City of Philadelphia by the Act of August 5, 1932, P. L. 45, §1, known as the Sterling Act, in part quoted

in the margin.[1] Defendant's principal contention is that the city, under the delegated authority of this act, lacks the power to levy the tax in question.

Defendant points to the purpose of the act "to confer upon cities ...... the power to levy, assess and collect taxes upon any and all subjects of taxation which the Commonwealth has power to tax......" and maintains that this legislation was enacted at a time when there was intergovernmental immunity from taxation, on the authority of *M'Culloch v. The State of Maryland,* 4 Wheat. 316 and *Dobbins v. Erie County,* 16 Peters 435. He contends that these and other like decisions of the United States Supreme Court, representing the state of the law at that time, must be read into the act. And hence, any powers delegated by the State must be restricted to the taxation of income not derived from federal sources. It is argued that since the State at the time the Sterling Act was passed was without power to tax federal income it could not delegate that power to another taxing authority.

---

[1] Section 1 ...... from and after the effective date of this act, the council of any city of the first or second class shall have the authority by ordinance, for general revenue purposes, to levy, assess, and collect, or provide for the levying, assessment and collection of, such taxes on persons, transactions, occupations, privileges, subjects and personal property, within the limits of such city of the first or second class, as it shall determine, except that such council shall not have authority to levy, assess and collect, or provide for the levying, assessment and collection of, any tax on a privilege, transaction, subject or occupation, or on personal property, which is now or may hereafter become subject to a State tax or license fee ...... It is the intention of this section to confer upon cities of the first and second classes the power to levy, assess and collect taxes upon any and all subjects of taxation which the Commonwealth has power to tax but which it does not now tax or license, subject only to the foregoing provisions that any tax upon a subject which the Commonwealth may hereafter tax or license shall automatically terminate upon the effective date of the State act imposing the new tax or license fee.

These contentions are founded upon a false premise. They assume that the State in 1932 was without power to authorize the tax and that, at the time of the enactment, its disability was determined by the above decisions. The effect of this assumption is to say that the limitation of power is now res judicata and cannot now be questioned. This is an extension of a principle beyond all proper limits and overlooks the fact that whether the Sterling Act offends against the constitution of the United States, in authorizing the taxing of a federal salary, is a question which can be determined only in an action involving a construction of the act itself. This is the first case involving that particular phase of the act and the final order here or upon further appeal, alone can decide the question. The city ordinance was adopted after the decision in *Graves v. O'Keefe,* supra, and our construction of it as affected by that ruling will be read into the Sterling Act as of the date of its enactment. The construction placed upon a statute by the courts becomes a part of the statute and hence a part of the law thereby enacted. Crawford, Statutory Construction, §184; *Douglass v. County of Pike,* 101 U. S. 677; *Eau Claire Nat. Bank v. Benson,* 106 Wis. 624, 82 N. W. 604. In further support of this conclusion we need only point to *Graves v. O'Keefe,* decided in 1939. The New York income tax statute, involved in that appeal, was enacted in the light of the M'Culloch and Dobbins cases, and yet that act was held to be sufficient to sustain a tax levied in 1934 upon a federal salary, notwithstanding that as late as January 4, 1937, salaries from federal sources were held to be immune. *People of State of New York ex rel. Rogers v. Graves et al.,* 299 U. S. 401, 57 S. Ct. 269. When a former decision is overruled, the reconsidered pronouncement will be considered as the law from the beginning. *People ex rel. Rice v. Graves et al.,* 273 N. Y. S. 582; affirmed in 270 N. Y. 498, 200 N. E. 288; certiorari denied, 298 U. S. 683. The

taxing power in this appeal must be upheld unless, in the act, this subject of taxation was excluded from its operation either specifically or by necessary implication. The controlling question, therefore, is one of construction to determine legislative intent.

The Sterling Act is clear and unambiguous. It speaks only in the broadest of terms. Ordinarily, construction of a statute to determine legislative intent is necessary only where it will bear two or more meanings. *Com. ex rel. Kelley v. Pommer et al.,* 330 Pa. 421, 199 A. 485. The occasion for this act and the object to be attained indicate no inconsistency between its letter and spirit. From the plain meaning of its language it is clear that nondiscriminatory taxes were contemplated, uniform upon the same class of subjects and of general application. That this was the actual intent as applied to the kind of tax in question is a reasonable conclusion from the circumstances attending its enactment. In 1932 the question of the right of the State to tax federal incomes had not been squarely answered. In *Dobbins v. Erie County,* supra, a tax upon the *office* of a commander of a United States Revenue Cutter was held to be unlawful. *Com. v. Mann,* 5 W. & S. 403, decided after the Dobbins case struck down a tax on the salary of an office created by the Constitution of this Commonwealth. But the opinion in that case contains this comment: "The property of a judge, his income, whether derived from this or any other source, we admit is a proper subject of taxation." In this court in *Short v. Up. Moreland Twp. Sch. Dist.,* 117 Pa. Superior Ct. 227, 177 A. 480, construing a statute enacted in 1921, a tax of five dollars on each resident over twenty-one years of age was sustained on the appeal of a mail clerk in the employ of the United States. An allocatur to our Supreme Court was refused, 117 Pa. Superior Ct. xxvii, and the United States Supreme Court dismissed an appeal, 296 U. S. 663. The trend of judicial decisions, *Rogers v. Graves,* supra, to the contrary, was

away from the rule of rhetoric[2] of the M'Culloch case and in the direction of an equal distribution of the burden of government upon all subjects within the same class without discrimination.

But assuming, by an application of the principles of the then decisions of the United States Supreme Court, the State in 1932 could not tax federal salaries, it does not follow that the legislature did not intend in the Sterling Act to provide the machinery for the taxation of such income in the future, with submission to the courts in the meantime as to existing immunity or exemptions thereafter imposed by judicial pronouncement. There is no evidence of any exception in favor of any subject or person. This legislation therefore, must be regarded as prospective in its intended operation, applicable generally to all subjects of taxation not preempted by the State, including subjects not then taxable upon the removal of the tax immunity. The effect of the state of the law prior to *Graves v. O'Keefe,* at most, was not to limit the powers of taxation which could be delegated by the Sterling Act but merely to hold the exercise of those powers in abeyance. When the disability of the State to tax federal incomes was removed, there was no need for a reenactment of the legislation to reach incomes formerly exempt; the powers originally granted, broad enough to include all income regardless of the source, were sufficient for the purpose; *Graves v. O'Keefe* merely removed a dam which impeded their flow.

Defendant's second contention is that even if the Sterling Act clothed the city with the power to tax federal incomes, Congress on October 9, 1940, by Public Act No. 819, 54 Stat. 1060, 4 U.S.C.A. 14, has affirmatively prohibited a tax on such salaries earned prior to December 31, 1940, in a federal area such as the Philadelphia Navy Yard. The act, in effect, declared

---

[2] Concurring opinion in *Graves v. O'Keefe,* supra, p. 489.

that residence within a federal area or the receipt of income from transactions occurring therein or "services performed in such area" shall not relieve any person from liability for any income tax levied by any duly constituted taxing authority. The act further provides that it shall be applicable only to income received after December 31, 1940. The relevant sections of the act are quoted below.[3]

It is not necessary to refer to the reason for this act. For our purpose we need only observe that it is no more than declarative of the existing law as established by *Graves v. O'Keefe*. The act provides that it shall be applicable to income received after December 31, 1940, but nowhere in it is there any indication of congressional intent that incomes earned prior thereto shall be exempt. The power to grant tax exemptions, except where there is constitutional immunity, is at least doubtful; the United States Supreme Court in *Graves v. O'Keefe* referred to the question but did not find it necessary to answer it, p. 478. Since this act creates no exemption it has no application to the question involved, except to recognize the city's power to tax incomes earned in a federal area after December 31, 1940. We know of no prohibition or exemption applicable to similar incomes earned after the decision in *Graves v. O'Keefe* and prior to that date.

Finally, defendant contends that, in any view, a State

---

[3] (a) No person shall be relieved from liability for any income tax levied by any State, or by any duly constituted taxing authority therein, having jurisdiction to levy such a tax, by reason of his residing within a Federal area or receiving income from transactions occurring or services performed in such area; and such State or taxing authority shall have full jurisdiction and power to levy and collect such tax in any Federal area within such State to the same extent and with the same effect as though such area was not a Federal area.

(b) The provision of subsection (a) shall be applicable only with respect to income or receipts received after December 31, 1940.

taxing unit may not burden the Federal Government with a tax upon those engaged in the national defense in time of war.

We may assume that the wages which defendant received from his federal employer are comparable with the wages paid by private employers for like services. If his contention were valid, the profits of manufacturers and all others who supply war materials would also be exempt from taxation. *Graves v. O'Keefe,* pp. 480, 481, refutes the argument in this language: The tax "is measured by income which becomes the property of the taxpayer when received as compensation for his services; and the tax laid upon the privilege of receiving it is paid from his private funds and not from the funds of the government, either directly or indirectly. The theory, which once won a qualified approval, that a tax on income is legally or economically a tax on its source is no longer tenable ...... and the only basis for implying a constitutional immunity from state income tax of the salary of an employe of the national government or of a governmental agency is that the economic burden of the tax is in some way passed on so as to impose a burden on the national government tantamount to an interference by one government with the other in the performance of its functions." A tax of $38.95 on an income of $2,596.73 could not work that result.

For these reasons we affirmed the judgment of the lower court on March 13, 1942.