**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Lebron Terrance THOMAS, Appellee.**

Superior Court of Pennsylvania.

Submitted March 2, 1999.
Filed Dec. 7, 1999.

Michael Streily, Deputy Dist. Atty., Pittsburgh, for Com., appellant.

Mitchell A. Kaufman, Asst. Public Defender, Pittsburgh, for appellee.

Peter Rosalsky, Asst. Public Defender, Philadelphia, amicus curiae.

Before JOHNSON, FORD ELLIOTT and ORIE MELVIN, JJ.

JOHNSON, J.:

¶ 1 This matter is before us on appeal by the Commonwealth of Pennsylvania from the judgment of sentence entered follow-ing the trial court's refusal to sentence the defendant under a section of the Pennsylvania Sentencing Code commonly described as the "three strikes" provision [hereinafter section 9714]. See 42 Pa.C.S. § 9714. This section provides for imposition of a mandatory sentence on any defendant previously convicted of one or more of thirteen enumerated "crimes of violence." See id. § 9714(g). Any such person is presumed to be a "high risk dangerous offender" and is subject to substantial sentence enhancement upon conviction of a second or third offense. See id. § 9714(c). If the defendant fails to rebut the statutory presumption, the trial court must impose a sentence of total confinement for at least ten years, and with two prior convictions, twenty-five years to life. See 42 Pa.C.S. § 9714(a)(1), (2) (respectively).

¶ 2 In this case, the trial court determined that the Commonwealth failed to establish the applicability of section 9714(a)(2) because one of the offenses on which the prosecution sought to rely was a juvenile adjudication of delinquency. Accordingly, the question before us on appeal is whether prior juvenile adjudications may be treated as "convictions" for the purpose of sentence enhancement under section 9714(a)(2). We conclude that application of section 9714(a)(2) to juvenile adjudications would expand this provision beyond the scope intended by the legislature and would violate the express language of the Juvenile Act. See 42 Pa.C.S. § 6354(a). Consequently, we concur in the trial court's refusal to apply the enhancement to the defendant in this case, and we affirm the judgment of sentence.

¶ 3 This action arises out of defendant Lebron Terrance Thomas's perpetration of a robbery and assault at the home of an elderly woman in the City of Pittsburgh on June 16, 1996. Thomas was twenty-five years old on the date of these events. On December 5, 1996, a jury found Thomas guilty of burglary, robbery and aggravated assault. See 18 Pa.C.S. §§ 3502,

3701(a)(1)(i), 3701(a)(1)(ii), 2701(a)(1) (respectively). Because Thomas's offenses constituted "crimes of violence" as defined by section 9714(g), the Commonwealth petitioned the court to impose the mandatory sentences prescribed by section 9714(a) and served notice on Thomas. In support of its petition, the Commonwealth asserted that Thomas had been convicted of crimes of violence on two prior occasions and was, therefore, subject to a mandatory minimum sentence of twenty-five years to life imprisonment. *See* 42 Pa.C.S. § 9714(a)(2). Thomas filed a brief in opposition arguing that his juvenile adjudications of delinquency could not be considered prior convictions for purposes of this recidivist sentencing statute.

¶ 4 At the sentencing hearing on February 4, 1997, the Commonwealth offered evidence that Thomas had been convicted as an adult in the State of New York for the crimes of robbery and attempted robbery. Additionally, the Commonwealth asked the court to consider Thomas's five prior juvenile adjudications for robbery in Allegheny County as convictions for purposes of sentencing under section 9714. The sentencing court, the Honorable Jeffrey A. Manning, found that Thomas's prior adult robbery conviction constituted a "crime of violence" as defined by section 9714(g), but that his robbery attempt conviction did not. The court declined to recognize Thomas's prior juvenile adjudications as "convictions" under section 9714(a), concluding that such treatment was beyond the intended scope of the enhancement provision and violative of the Juvenile Act. *See* N.T. Sentencing Hearing, 2/4/97, at 7–8. The court concluded that because the Commonwealth had established Thomas's conviction of only one prior crime of violence, Thomas was not subject to imposition of sentence under section 9714(a)(2). The court also concluded, however, that because Thomas had previously been convicted of one crime of violence and had not rebutted the presumption that he was a "high risk dangerous offender," he was subject to the mandatory sentence established by section 9714(a)(1). Accordingly, the court imposed sentences of ten to twenty years' incarceration for robbery; five to twenty years' for burglary and five to ten years' for aggravated assault. The court ordered Thomas to serve the sentences for burglary and aggravated assault consecutively to one another and concurrent to the robbery sentence. The Commonwealth filed this appeal pursuant to section 9714(f), which provides: "If a sentencing court shall refuse to apply this section where applicable, the Commonwealth shall have the right to appellate review of the action of the sentencing court." 42 Pa.C.S. § 9714(f).

¶ 5 The Commonwealth poses the following question for our review:

> WHETHER THE TRIAL COURT ERRED IN NOT CONSIDERING APPELLEE'S PRIOR JUVENILE ADJUDICATIONS FOR ROBBERY AS PRIOR CONVICTIONS FOR PURPOSES OF APPLYING 42 Pa.C.S. § 9714?

Brief for Appellant at 6. The Commonwealth asserts that the trial court applied too narrow an interpretation to the term "conviction" as used in section 9714, and so erred in refusing to apply the section to Thomas's juvenile adjudications. Brief for Appellant at 18. The Commonwealth argues that the underlying purpose of section 9714, to deter continued commission of "crimes of violence" by repeat offenders, is better served by a definition of conviction that includes adjudications of juvenile delinquency. *See id.* at 21–22 ("Juveniles in adult court, who have committed a recent act of violence, and who have a history of violent crime, albeit as a juvenile, are as much a danger to society as an offender with a history of adult convictions for violent behavior."). In support of the broad interpretation the Commonwealth advances, it relies on our Supreme Court's interpretation of provisions of Pennsylvania's death penalty sentencing statute which, like section 9714, provides for con-

sideration of a defendant's prior record of recidivism as a basis on which to impose sentence. *See id.* at 21 (citing *Commonwealth v. Baker*, 531 Pa. 541, 614 A.2d 663 (1992)). We reject the Commonwealth's position.

¶ 6 The death penalty sentencing statute, which the Supreme Court reviewed in *Baker*, provides, in pertinent part:

§ 9711. Sentencing procedure for murder of the first degree

\* \* \* \*

(c) Instructions to the jury.—

(1) Before the jury retires to consider the sentencing verdict, the court shall instruct the jury on the following matters:

   (i)    the aggravating circumstances specified in subsection (d) as to which there is some evidence.

   (ii)   the mitigating circumstances specified in subsection (e) as to which there is some evidence.

\* \* \* \*

(iv) The verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance specified in subsection (d) and no mitigating circumstance or if the jury finds one or more aggravating circumstances which outweigh any mitigating circumstances. The verdict must be a sentence of life imprisonment in all other circumstances.

42 Pa.C.S. § 9711(c)(i), (ii), (iv). The statute enumerates seventeen such aggravating circumstances, one of which is whether "[t]he defendant has a significant history of felony convictions involving the use of threat of violence to the person." *See id.* § 9711(d)(9).

¶ 7 In *Baker*, the Supreme Court concluded that accurate determination of whether a "significant history" of felony convictions exists requires consideration of all of the defendant's prior offenses, not limited to those of which he or she was convicted as an adult. The Court concluded specifically that the defendant's record of juvenile offenses could be considered in capital sentencing. The Court reasoned that:

Pennsylvania adheres to a system of individualized sentencing which must explore the defendant's prior behavior and dangerousness before sanctions are imposed. For the care of capital sentencing, indeed, is "a function of character analysis ... and the central idea of the present sentencing statute is to allow a jury to take into account such relevant information, bearing on a defendant's character and record, as is applicable to the task of considering the enumerated aggravating circumstances."

*Baker*, 531 Pa. at 567–68, 614 A.2d at 676 (quoting *Commonwealth v. Beasley*, 505 Pa. 279, 289, 479 A.2d 460, 465 (1984)). The Court concluded accordingly that:

while the delinquent record could not be used as "evidence ... in another court," to "deprive the Courts of the right to be informed of and to consider the history and background of the person subject to sentence may result in sentences which are unjust and unfair to both society and defendants."

*Id.* at 566–57, 614 A.2d at 676 (quoting *Commonwealth ex rel. Hendrickson v. Myers*, 393 Pa. 224, 231, 144 A.2d 367, 371 (1958)).

¶ 8 The Commonwealth suggests that here, as in *Baker*, consideration of an offender's juvenile record is necessary to allow the court to assess accurately the threat the offender poses to society. Brief for Appellant at 21–22. We reject this contention because it elevates the presumptive spirit of the legislation over its express language and disregards material differences in the manner of operation of the death penalty sentencing statute as contrasted with section 9714. The death penalty statute allows the factfinder to conclude that an aggravating circumstance

is present if "the defendant has *a significant history* of felony convictions involving the use or threat of violence to the person." 42 Pa.C.S. § 9711(d)(9) (emphasis added). Our cases contain no restriction upon the number or character of offenses the factfinder may accept as "a significant history." *See Commonwealth v. King*, 554 Pa. 331, 371, 721 A.2d 763, 783 (1998) ("[T]he weight to be accorded the aggravating and mitigating factors presented is a function that is reserved solely for the jury."). While the jury may determine that a single prior conviction (or adjudication) constitutes "a significant history" under subsection (d)(9), it is also vested with discretion to find that one or even several such occurrences is not "significant." Thus, the subjective nature of the determination to be made under the statute affords discretion in the factfinding process and creates a need for the fullest measure of information possible to impose sentence. *See Baker*, 531 Pa. at 566–57, 614 A.2d at 676 ("[T]o deprive the Courts of the right to be informed of and to consider the history and background of the person subject to sentence may result in sentences which are unjust and unfair to both society and defendants.").

¶ 9 Conversely, under section 9714, the court, acting as factfinder, is not vested with discretion in the factfinding process, but must apply a mandatory minimum sentence when two prior convictions are established. Section (a)(2), under which the Commonwealth asserts the trial court should have sentenced Thomas, provides explicitly that:

> Where the person had at the time of the commission of the current offense previously been convicted of two or more such crimes of violence ... the person *shall* be sentenced to a minimum sentence of at least 25 years of total confinement....

42 Pa.C.S. § 9714(a)(2) (emphasis added). Under this provision, the court's determination is one of objective fact; prior convictions either exist, or they do not. The court is neither required nor even licensed to determine whether those convictions constitute "a significant history" of violent crime, but is relegated merely to counting how many convictions appear of record.

¶ 10 This distinction is crucial to an understanding of our Supreme Court's decision in *Baker*. *Baker* requires consideration of adjudications of delinquency for purposes of capital sentencing precisely because the discretion afforded the jury in the factfinding process requires that it be afforded all information necessary to afford a dispassionate overview of the defendant as an individual. Because section 9714 does not incorporate this subjective system of individualized sentencing, the factfinding process upon which the Court in *Baker* premised its holding is not at issue. Consequently, the holding itself has no value in determining the proper use of prior juvenile adjudications under section 9714.

¶ 11 Because our Supreme Court has not determined the potential use of juvenile adjudications under section 9714, we must ascertain and effectuate the intent of the legislature in enacting section 9714. *See Commonwealth v. Lopez*, 444 Pa.Super. 206, 663 A.2d 746, 748 (1995) (stating that where our Supreme Court has not previously interpreted a statute, we must discern the legislative intent underlying its enactment). The legislature has directed that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). *See also Commonwealth v. Heberling*, 451 Pa.Super. 119, 678 A.2d 794, 795 (1996). Accordingly, "even where legislation demonstrates a 'recidivist philosophy,' that philosophy cannot be exalted over the plain meaning of the statute." *West v. Commonwealth Dep't of Transp.*, 685 A.2d 649, 651 (Pa.Cmwlth. 1996).

¶ 12 Consequently, "[i]n construing a statute to determine its meaning, the

courts must first determine whether the issue may be resolved by reference to the express language of the statute, which is to be read according to the plain meaning of the words." *Id. See also Commonwealth v. Harner*, 533 Pa. 14, 20, 617 A.2d 702, 705 (1992) ("When language of a statute is clear and unambiguous, it must be given effect in accordance with its plain and common meaning."). We will consider the language of a statute ambiguous "only where it will bear two or more meanings." *City of Philadelphia v. Schaller*, 148 Pa.Super. 276, 25 A.2d 406, 409 (1942). *See also Pennsylvania Assigned Claims Plan v. English*, 541 Pa. 424, 430, 664 A.2d 84, 87 (1995) (reasoning that statute is ambiguous if "unclear or susceptible of differing interpretations."). "Words having a precise and well-settled legal meaning must be given that meaning when they appear in statutes unless there is a clear expression of legislative intent to the contrary." *Commonwealth v. Hicks*, 365 Pa. 153, 154, 74 A.2d 178, 178 (1950). *See also* 1 Pa.C.S. § 1903(a). Moreover, where a general provision in one statute is in conflict with a specific provision in the same or another statute, the specific provision will prevail. *Olshansky v. Montgomery County Election Bd.*, 488 Pa. 365, 370, 412 A.2d 552, 555 (1980). *See also Commonwealth v. Klingensmith*, 437 Pa.Super. 453, 650 A.2d 444, 447 (1994).

¶ 13 Upon review, we conclude that section 9714 is written in terms with precise legal meanings that clearly restrict application of the measure to criminal defendants found guilty as adults, and not to juvenile delinquents. This section directs imposition of a mandatory sentence on "[a]ny person who is *convicted* ... of a crime of violence" if that person has "previously been *convicted* of two or more such crimes of violence." *See* 42 Pa.C.S. § 9714(a)(1), (2) (emphasis added). Our legislature has defined conviction in the Crimes Code as follows:

There is a conviction if the prosecution resulted in a judgment of conviction which has not been reversed or vacated, a verdict of guilty which has not been set aside and which is capable of supporting a judgment, or a plea of guilty accepted by the court.

18 Pa.C.S. § 109(3). We have applied this definition under circumstances analogous to those in this case, determining for purposes of recidivist sentencing enhancement, that an adjudication of delinquency is not a conviction of crime. *See Commonwealth v. Rudd*, 366 Pa.Super. 473, 531 A.2d 515 (1987) (refusing to recognize adjudications of delinquency as prior convictions for purposes of enhanced sentencing under DUI statute, 75 Pa.C.S. § 3731). We have recognized also that the fundamental considerations on which an adult conviction is based are not operative in juvenile adjudications. *See In re Holmes*, 379 Pa. 599, 603, 109 A.2d 523, 525 (1954) ("[Juvenile proceedings] are not in the nature of a criminal trial, but constitute merely a civil inquiry or action looking to the treatment, reformation and rehabilitation of the minor child. Their purpose is not penal but protective."). Significantly, we find no language in section 9714 that purports to alter the presumptions underlying the juvenile justice system or to apply a more expansive definition of conviction. Section 9714 does not purport to prescribe a penalty on the basis of any form of decision other than conviction, and makes no reference in any context, to adjudications of delinquency. We find these omissions dispositive. Given the penal nature of section 9714 and the limited import of its language, we must consider specific prohibitions of the Juvenile Act that limit the subsequent effect of an adjudication of delinquency. *See Olshansky*, 488 Pa. at 370, 412 A.2d at 554.

¶ 14 The Juvenile Act, pursuant to which the defendant was adjudicated delinquent prior to his conviction in this case, states precisely and without equivocation that a juvenile adjudication is not a conviction of crime and may be considered in subsequent proceedings only for limited pur-

poses. The general rule propounded by the Juvenile Act codifies the long-standing policy of this Commonwealth, as follows:

### § 6354. Effect of adjudication

(a) **General rule.**—An order of disposition or other adjudication in a proceeding under this chapter *is not a conviction of crime* and does not impose any civil disability ordinarily resulting from a conviction or operate to disqualify the child in any civil service application or appointment.

42 Pa.C.S. § 6354(a) (emphasis added). According this language its accepted legal meaning, we find this provision a conclusive expression of the legislature's intent that those adjudicated delinquent shall not be subject to the penalties associated with "conviction." The language of the provision is precise and mandatory, directing that an adjudication "is not" a conviction. Thereafter, the section delineates only four circumstances under which a juvenile adjudication may be given effect in future judicial proceedings. That section provides as follows:

(b) **Effect in subsequent judicial matters.**—The disposition of a child under this chapter may only be used against him:

(1) in dispositional proceedings after conviction for the purposes of a presentence investigation and report if the child was adjudicated delinquent;

(2) in a subsequent juvenile hearing, whether before or after reaching majority;

(3) if relevant, where he has put his reputation or character in issue in a civil matter; or

(4) in a criminal proceeding, if the child was adjudicated delinquent for an offense, the evidence of which would be admissible if committed by an adult.

42 Pa.C.S. § 6354(b). This provision, again, is highly specific and wholly unambiguous. Each exception provides for admission of evidence under limited circumstances for specific purposes, including uses in criminal court under subsections (1) and (4). Yet, despite the specificity of these exceptions, the first of which bears directly on sentencing, none of them purports to allow use of prior juvenile adjudications as predicate *convictions* under any recidivist statute. *See* 1 Pa.C.S. § 1924 ("Exceptions expressed in a statute shall be construed to exclude all others."). Considering this omission in view of the explicit prohibition of subsection (a), that an adjudication of delinquency is not a conviction of crime, we conclude that the plain language of the Juvenile Act prohibits the use of prior juvenile adjudications as predicate offenses under section 9714.

¶ 15 Should we assume that the statutory language does not demonstrate the intent of the legislature surrounding application of section 9714 to juvenile adjudications, the Statutory Construction Act requires that we discern the legislative intent with reference to the following considerations:

### § 1921. Legislative intent controls

\* \* \* \*

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S. § 1921(c).

¶ 16 Upon review of the legislative history of section 9714, we find remarks offered by the law's proponents illustrative of the intention of the legislature. In point of fact, debate on the floor of our General Assembly substantiates the plain language of the legislation, suggesting that section 9714(a)(2) applies only to those convicted as adults in criminal court and not to those adjudicated delinquent. The Honorable D. Michael Fisher, then serving in our state senate, described the measure repeatedly as one applicable to *adult offenders* to the apparent exclusion of juveniles. Senator Fisher advocated the bill, as follows:

> [House Bill No. 93] is one that I believe sends a very strong and clear signal to violent criminals, **adult criminals** who are repeat offenders, that if you continue to violate Pennsylvania's law, you run the risk of going to jail for a long time.
>
> \* \* \* \*
>
> It is a very important step to send the signal to **adult offenders** that if you are a recidivist, if you are a repeater and you do not learn that the first time **you are convicted** and **go to jail** and **serve a term**, then Pennsylvania is not going to have any patience with you. Pennsylvania is going to throw the book at you.
>
> \* \* \* \*
>
> *Under the [proposed] changes in the law, a person of the tender age of 15 could be convicted perhaps of committing two violent felonies over a weekend. Let us use current law, age 18.* Those convictions were had after the passage of Senate Bill No. 100 that is in the House of Representatives. *They serve 20 years in jail. At age 35 or 38 they get out,* and one other aggravated assault is committed. Now some might say that is the case in which that person should go for life. Others may say, let

us let it up to the court. But basically under this bill, if it is passed the court is only going to have two options: 25 years in jail or life imprisonment on that third conviction....

Pa. Senate Journal, 1ˢᵗ Spec. Sess. at 262, 265 (September 19, 1995) (emphasis added). We find significant direction in Senator Fisher's awareness and discussion of pending changes in the law that would allow an offender to be convicted as an adult at fifteen years of age. Within two months of the senator's remarks, the General Assembly adopted such legislation as P.L. 1127, No. 33 (Spec.Sess., No.1), section 3, effective 120 days from November 17, 1995. That provision amended the Juvenile Act, changing the definition of "delinquent act" to exclude enumerated offenses committed by the child when he was "15 years of age or older" if the conduct was committed with a gun or if the child had a prior juvenile record. *See* 42 Pa. C.S. § 6302(2)(ii), (iii). The offenses enumerated include each and every offense classified as a crime of violence under section 9714, save burglary and arson. *Compare* 42 Pa.C.S. § 6302(2)(ii), (iii), *with* 42 Pa.C.S. § 9714(g). Senator Fisher's consideration of the effect on section 9714 of proposed changes in the Juvenile Act that would allow conviction of "a person of the tender age of 15" for "violent felonies," reveals the intent of the legislature that only adults should be subject to section 9714. Certainly, had Senator Fisher's understanding been otherwise, he would have seen no need to reference the ages of potential defendants or to consider the role of "violent felonies" in triggering application of section 9714.

¶ 17 Similarly, Senator Stewart Greenleaf, the prime sponsor of this legislation, reflected on the age at which a defendant could be first subject to sentence for a third offense, as now provided in section 9714(a)(2). Greenleaf described this provision as follows:

> In addition, we have given the court the discretion to give the offender life im-

prisonment.... But in order for this person to be up for the third strike, he has to at least be in his 20s, because remember, he has already gotten a 5–year sentence for the first offense, a 10–year sentence for the second offense. You are already talking about fifteen years. This guy has to be in his late 20s or early 30s when he gets his third strike. If he gets a third strike and twenty five years, you are talking about at least 55 to 65 years of age minimum [when he or she is released from prison].

Pa. Senate Journal, 1 st Spec. Sess. at 255, September 18, 1995. We find instructive Senator Greenleaf's recognition of the minimum age at which a defendant could be subject to sentence enhancement for a third strike, as well as his conclusion about the offender's potential age upon release from prison. Under the law applicable on the date of Greenleaf's remarks, a defendant could be convicted as an adult in criminal court at the age of 18. Incarceration for fifteen years following his commission of two crimes of violence would make him first eligible for sentence on a third strike at age thirty-three. Under the proposed amendment to the law then pending, (now enacted as P.L. 1127, No. 33 (Spec.Sess., No.1), section 3), the same individual, first convicted at age fifteen, would be eligible for a third strike as early as age thirty. Following a twenty-five year sentence for such a third strike, the offender would be released from prison at a minimum age of fifty-five. Senator Greenleaf's recognition of the element of the offender's age, as well as the specific ages at which an offender would obtain eligibility for each new strike, is further indication of the legislative intent that section 9714 should apply to adult convictions only. Had Greenleaf's understanding been consonant with the interpretation advanced by the Commonwealth, allowing application of section 9714 on the basis of adjudications of juvenile delinquency, he could not have characterized the effect of the statute based on the age of the offender, either upon conviction or release. In-deed, were we to recognize juvenile adjudications as convictions of crime, an offender could accumulate at least two strikes while still a juvenile and could be sentenced to life imprisonment on a third strike before he or she even reached majority. Such a result is repudiated by the apparent intention of both of the measure's proponents and, we conclude, by the intent of the legislature that enacted the measure in section 9714.

¶ 18 Upon review of both the plain language of section 9714 and its legislative history, we conclude that section 9714(a) does not mandate consideration of a defendant's prior adjudications of delinquency for purposes of sentence enhancement under subsection (a)(2). Further, upon consideration of the specific prohibition of the Juvenile Act proscribing treatment of juvenile adjudications as convictions of crime, see 42 Pa.C.S. § 6354(b), we conclude that a defendant's prior adjudications of delinquency may not be considered prior "convictions" under section 9714(a)(2). Moreover, for the reasons discussed, *supra*, we find no value in the Commonwealth's assertion that *Commonwealth v. Baker* would allow such consideration. Consequently, we hold that a trial court may not consider prior adjudications of delinquency as convictions of violent crime under section 9714, and may not apply the sentence enhancement prescribed by section 9714(a)(2) on the basis of any adjudication under the Juvenile Act.

¶ 19 Accordingly, we conclude that the trial court did not err in refusing to apply section 9714(a)(2) on the basis of Thomas's five prior adjudications of delinquency. We affirm the judgment of sentence.

¶ 20 Judgment of sentence **AF-FIRMED.**

¶ 21 Judge ORIE MELVIN files a Dissenting Opinion.

ORIE MELVIN, J., dissenting:

¶ 1 I respectfully dissent from the Majority's holding that a defendant's prior

adjudications of delinquency may not be treated as predicate convictions under Pennsylvania's "three strikes" legislation, 42 Pa.C.S.A. § 9714 (the Statute). I find the Majority's analysis flawed in that it improperly distinguishes binding precedent. The Majority errs in failing to abide by our Supreme Court's interpretation in *Commonwealth v. Baker*, 531 Pa. 541, 614 A.2d 663 (1992) of the term "conviction" under the Juvenile Act in the context of sentence enhancement. Instead, the Majority engages in its own interpretation based upon the alleged plain meaning of the phrase "convicted of a crime of violence" as it appears in the recidivist statute, and the term "conviction of crime" as it appears in the Juvenile Act, 42 Pa.C.S.A. § 6354(a). In so doing the Majority creates irrelevant factual distinctions, which impedes the application of *stare decisis*. As an intermediate appellate court "[i]t is not our prerogative to apply different methods of analysis where the Supreme Court has made clear which particular analysis it believes should be applied to a particular situation." *Preiser v. Rosenzweig*, 418 Pa.Super. 341, 614 A.2d 303, 306–307 (1992), *appeal granted*, 535 Pa. 637, 631 A.2d 1009 (1993), *affirmed*, 538 Pa. 139, 646 A.2d 1166 (1994).

¶ 2 I believe the use of juvenile adjudications as prior convictions is consistent with both the purpose of § 9714 and our Supreme Court's holding in *Baker*, *supra*. I find illogical the Majority's conclusion that the application of the *Baker* decision to § 9714(a)(2) of the Statute would expand this provision beyond the scope intended by the legislature and would violate the express language of the Juvenile Act. The Majority points to differences in the factfinding process that precede sentencing under the death penalty statute versus the "three strikes" statute. The Majority notes that "[w]hile the jury may determine that a single prior conviction (or adjudication) constitutes 'a significant history' under subsection (d)(9), it is also vested with discretion to find that one or even several such occurrences is not 'significant.'" Ma-

jority Opinion at 464. This is a distinction without a difference. The Supreme Court's decision in *Baker* was not dependent upon the discretion afforded jurors in the factfinding process. The jury was not given discretion in determining whether or not a juvenile adjudication was a conviction; the *Baker* Court clearly held that it was as a matter of law. It matters not whether the sentence enhancement to be applied is discretionary or mandatory. Rather, *Baker* dictates that for sentence enhancement purposes a juvenile adjudication is to be considered the equivalent of a conviction.

¶ 3 Applying a discretionary versus mandatory sentencing dichotomy cannot vitiate the effect given by our Supreme Court to juvenile adjudications pursuant to § 6354 of the Juvenile Act. The *Baker* Court unequivocally finds juvenile adjudications are synonymous with convictions for the purpose of applying aggravating circumstance (d)(9) of § 9711 of the Death Penalty statute. In this context I can discern no substantive difference between the operation of § 9711 and § 9714. Both have mandatory as well as discretionary sentencing elements. For instance, when the jury in a death penalty case finds at least one aggravating circumstance and no mitigating circumstances the statute mandates the imposition of a death sentence. § 9711(c)(1)(iv). Thus, conceivably a jury could find that based solely upon a defendant's felony juvenile adjudications § 9711(d)(9) is applicable, mandating death. Likewise, when the court under § 9714(a)(2) finds two or more convictions involving crimes of violence, this provision of the Sentencing Code mandates a minimum sentence of twenty-five years and further gives the court discretion to impose a life sentence.

¶ 4 Since a jury may treat juvenile adjudications as convictions under § 9711(d)(9), so should a judge be able to apply the same treatment under § 9714. I find it would be illogical to permit the use of

juvenile adjudications to establish a defendant's "history of felony convictions" and thereby subject a defendant to the most severe penalty of death, and then preclude their use to establish prior convictions for crimes of violence under § 9714, which imposes a less severe penalty. Consequently, the *Baker* decision does not stand for the proposition that juvenile adjudications may only be taken into consideration as a factor when imposing a discretionary sentence.

¶ 5 Moreover, both provisions are concerned with enhancing the penalty for recidivists. As this Court noted in *Commonwealth v. Krum*, 367 Pa.Super. 511, 533 A.2d 134 (1987) in reference to the prior version of § 6354(b)(1):

the legislature has specifically provided that prior juvenile adjudications of delinquency may be used "in dispositional proceedings after conviction of a felony. . . ." Thus, "[i]t is clearly the intent of the Legislature that a child who continues his pattern of serious and violent anti-social activity into adulthood should not receive the benefit of a cloak of immunity regarding that behavior, when it is relevant to predicting future behavior and the public safety is at risk."

*Krum* at 139 (quoting *Commonwealth v. Smith*, 333 Pa.Super. 179, 481 A.2d 1365, 1366 (1984)). Accordingly, the Majority's holding is at odds with the purpose of recidivist legislation in general and specifically § 9714, "to deter violent criminal acts by imposing harsher penalties on those [be they adults or juveniles] who commit repeated crimes of violence." *Commonwealth v. Eddings*, 721 A.2d 1095, 1100 (Pa.Super.1998).

¶ 6 Our Supreme Court has also acknowledged that § 9714 "serve[s] the legitimate public policy of segregating from society those persons with propensities to commit crime, who by their repeated criminal acts demonstrate their unwillingness

or inability to be rehabilitated." *Commonwealth v. Smith*, 528 Pa. 380, 385, 598 A.2d 268, 271 (1991). We need not be reminded of the student killings at Columbine High School in Littleton, Colorado to recognize the savagery of which juveniles are capable. The danger posed to society by those who have a history of violent crime is the same whether the prior violent behavior was committed as an adult or a juvenile. Perhaps, as the Commonwealth notes "[t]he inability to learn from one's conduct is even more egregious in the instance of the child repeat offender, since . . . the very structure of the juvenile system is aimed at rehabilitation, treatment, and reformation." Commonwealth's brief at 22. Thus, by continuing to engage in violent conduct upon reaching majority, they are clearly demonstrating their inability to be rehabilitated.

¶ 7 Additionally, I dispute the Majority's contention this Court's holding in *Commonwealth v. Rudd*, 366 Pa.Super. 473, 531 A.2d 515 (1987) lends support to its position. In *Rudd*, a panel of this Court, prior to our Supreme Court's decision in *Baker*, held that an adjudication of delinquency for a DUI could not be employed as a previous conviction for the purpose of imposing the enhanced sentencing provisions of § 3731(e) of the Vehicle Code. Three years later *Rudd* was effectively overruled when § 3731(e) was amended to specifically include juvenile adjudications as predicate offenses necessitating the enhancement of the offender's sentence.[1] The Majority finds dispositive the fact that when the legislature subsequently amended § 9714 in 1995 it "makes no reference in any context, to adjudications of delinquency." Majority opinion at 465.

¶ 8 To the contrary, the legislature's response to the decision in *Rudd* supports application of the rule in *Baker*. The Majority fails to consider that *Rudd* was nev-

---

1. *See* Act of May 30, 1990, P.L. 173, No. 42, § 15; 75 Pa.C.S.A. § 3731(e)(1)(ii),(iii),(iv), and (2).

er appealed to the Supreme Court, and thus our highest appellate court did not have occasion to construe whether previous convictions included juvenile adjudications until 1992 when it decided *Baker*. Since *Baker* was decided after the 1990 amendment of § 3731(e) and prior to the 1995 amendment of § 9714, the fact that § 9714 makes no reference to juvenile adjudications as predicate offenses could be indicative of the legislature's recognition that the matter was already decided. Therefore, the legislature may have deemed it unnecessary to specifically include language concerning juvenile adjudications.[2]

¶ 9 Moreover, despite the facial appeal of the Majority's argument concerning the legislative history of § 9714 as reflecting the General Assembly's intent to apply § 9714 only to adult convictions, I note that as an intermediate appellate court we are not at liberty to engage in a reexamination of the effect to be given to juvenile adjudications in the sentencing context once our Supreme Court has spoken on the subject. *Preiser, supra.*

Where the Supreme Court has spoken on a particular subject, it is our obligation, as an intermediate appellate court, to follow and apply that decision so as to establish some measure of predictability and stability in our case law. In the absence of a legally relevant distinction between the facts of a previous case and the case before us, we are obliged to follow the dictates of the Supreme Court's decision in the prior case. Resolving cases by attempting to create irrelevant, factual distinctions impedes the application of *stare decisis*, the principal function of which is to imbue the judicial system with some measure of predictability and stability, and places the development of the law in a constant, uncertain state of flux such that neither practitioners nor trial judges can, with any degree of predictability,

determine the proper application of the law to each new case involving similar facts that comes before them. It is also not our prerogative to apply different methods of analysis where the Supreme Court has made clear which particular analysis it believes should be applied to a particular situation.

*Id.* at 306–307 (quoting *Malinder v. Jenkins Elevator & Machine Co.*, 371 Pa.Super. 414, 538 A.2d 509, 513 (1988)). Having found no legally relevant distinction, *Baker's* interpretation of the effect to be given to juvenile adjudications should control.

¶ 10 I further find the majority's reliance upon remarks offered by the legislation's proponents to be misplaced. The proponents are not saying anything about whether or not juvenile adjudications should be considered as prior convictions of crimes of violence. The unstated assumption in all the examples is that § 9714 does not apply until a defendant is tried and convicted as an adult. It is only at this point that the sentencing court looks to the defendant's prior history of "convictions" for crimes of violence, be they committed while a juvenile or after reaching majority. Application of § 9714 is clearly not an option available to a judge under the Juvenile Act when considering the appropriate dispositional order after an adjudication of delinquency. *See* 42 Pa.C.S.A. § 6352 (Disposition of delinquent child). Thus, the proponents' references to "adult criminals" or "adult offenders" is merely in recognition of the immutable fact that § 9714 applies only after being convicted in adult court. It does not matter whether that conviction occurs when the defendant is age 15 or 50, so long as the defendant was tried as an adult then § 9714 is applicable. For these reasons, I respectfully dissent.

---

**2.** Additionally, the legislature's 1995 amendment of § 6354(b) to include exception number (4) could be viewed as the codification of the holding in *Commonwealth v. Baker, supra*.