**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Terell HALE, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 8, 2013.
Filed Feb. 6, 2014.

Victor E. Ranch, Philadelphia, for appellant.

Anthony V. Pomeranz, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: BOWES, DONOHUE, and OTT, JJ.

OPINION BY BOWES, J.:

Terell Hale appeals from the judgment of sentence of twelve years and four months to twenty-six years and eight months incarceration imposed by the trial court after a jury found him guilty of persons not to possess a firearm, firearms not to be carried without a license, carrying a firearm on public streets in Philadelphia, and receiving stolen property. After careful review, we uphold the underlying verdicts of guilt but vacate Appellant's judgment of sentence and remand for re-sentencing.

The facts giving rise to Appellant's convictions involved a home invasion on April 10, 2010. At approximately 1:45 a.m., Appellant entered the home of five-month pregnant Shyeta Brown and her five-year-old son. Appellant pointed a handgun at the victim's face, told her and her child to shut up and ordered them to place their heads underneath a pillow. After the victim informed Appellant that she did not have any money, he retrieved her keys and allowed two other men into the apartment. Appellant also placed the covers of the victim's bed over her and her son's head. The men asked Ms. Brown where she kept her money before taking her television and fleeing.

A neighbor heard the screams of Ms. Brown and her son and telephoned police. She observed two men standing outside the front door of the apartment, and later identified Appellant's co-defendant, Andre Bassett. The neighbor witnessed the two men enter Ms. Brown's apartment after the door was opened. One of the men knocked on her door, and she informed them that police were on the way.

Police responded to the scene quickly and drove the victim around the neighborhood in an attempt to find the perpetrators. In addition, after learning of the report of the home invasion, Officer Rosario Capaccio saw a television located inside a fence in a front lawn approximately two blocks from the victim's residence. The victim identified the television as hers. Police set up surveillance in the area and witnessed a minivan approach. Despite it being near 3:00 a.m., the van's lights were not illuminated. Appellant and Andre Bassett exited the vehicle, and Appellant attempted to retrieve the television. As police approached, Appellant and Bassett began to walk away before running. Appellant attempted unsuccessfully to evade police by hiding between two cars. Upon opening the sliding door to the van, Detective Andrew Danks saw a black handgun on the floor of the vehicle. He later obtained a search warrant for the van and police recovered the weapon.

After police arrested Appellant and Bassett, they transported the victim to the scene. Both men were in handcuffs. The victim identified Appellant as the individual who broke into her apartment and pointed a gun at her. Appellant filed a suppression motion, contending that the victim's out-of-court identification was unduly suggestive. The court denied the motion and the matter proceeded to jury selection.

During jury selection, Appellant asked that juror number 39 be stricken for cause. Appellant proffered that, since the juror was a law enforcement officer previously employed by the Philadelphia District Attorney's Office and currently a school police officer, he should be struck as *per se* biased. The court denied the request, and Appellant exercised a peremptory strike to remove the individual from the final jury pool. The jury found Appellant guilty of the firearms offenses and receiving stolen property; however, they could not reach a verdict on the remaining charges. The court declared a mistrial as to charges of robbery, burglary, and conspiracy.

Thereafter, on December 19, 2011, the court sentenced Appellant consecutively on each conviction. Specifically, it sentenced Appellant to five to ten years incarceration for persons not to possess a firearm, three and one-half years to seven years on the firearms not to be carried without a license charge, two to four years for receiving stolen property, and one year and ten months to four years and ten months for carrying a firearm on the public streets of Philadelphia. Appellant did not timely file a post-sentence motion, but on January 4, 2012, requested and filed a *nunc pro tunc* post-sentence motion. The court granted Appellant's request to file the motion, and vacated the original sentence.

The court conducted a second sentencing hearing on March 12, 2012. Therein, Appellant maintained that his sentence was both excessive and illegal. In this latter respect, he argued that his sentence for persons not to possess a firearm exceeded the statutory maximum for the grading of the offense. In leveling this argument, he posited that the court incorrectly increased the grading of the crime to a second-degree felony based on a prior juvenile adjudication. According to Appellant, the proper grading of his offense should have been as a misdemeanor of the first-degree based on the default grading provision for firearms offenses outlined in 18 Pa.C.S. § 6119.

The court rejected Appellant's arguments and reinstated its original sentence. This timely appeal ensued. The trial court directed Appellant to file and serve a Pa. R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant complied, and the court authored its Pa.R.A.P. 1925(a) decision. The matter is now ready for this Court's review. Appellant presents three issues for our consideration.

1. Did not the trial court err in denying the motion to suppress the out-of-court identification, as well as the subsequent in-court identifications, as the circumstances of the identification were unduly suggestive?

2. Did not the trial court err in denying Mr. Hale's challenge to jury panel member #39 for cause, forcing Mr. Hale to use his last peremptory challenge?

3. Was not the sentence of five to ten years incarceration for the charge of persons not to possess firearms illegal, as the proper grade of the offense under the circumstances of this case was as a misdemeanor of the first degree?

Appellant's brief at 3.

Appellant's first issue is a challenge to the trial court's suppression ruling. In addressing this issue, we examine the suppression court's factual findings to determine if they are supported by the record and if its legal conclusions drawn therefrom are correct. *Commonwealth v. Wade*, 33 A.3d 108, 114 (Pa.Super.2011). We are bound by facts supported by the record and will reverse only where the court's legal conclusions are erroneous. *Id.* We consider the Commonwealth's evidence at the suppression hearing and so

much evidence, if any, presented by the defense that is uncontradicted. *Id.*[1]

In evaluating whether an out-of-court identification should be suppressed as unduly suggestive, this Court has consistently explained:

"Suggestiveness in the identification process is but one factor to be considered in determining the admissibility of such evidence and will not warrant exclusion absent other factors." *McElrath* [*v. Com.*], [405 Pa.Super. 431] 592 A.2d [740] at 742 [ (1991) ]. As this Court has explained, the following factors are to be considered in determining the propriety of admitting identification evidence: "the opportunity of the witness to view the perpetrator at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the perpetrator, the level of certainty demonstrated at the confrontation, and the time between the crime and confrontation." *McElrath*, 592 A.2d at 743 (citation omitted). The corrupting effect of the suggestive identification, if any, must be weighed against these factors. *Commonwealth v. Sample*, 321 Pa.Super. 457, 468 A.2d 799 (1983). Absent some special element of unfairness, a prompt "one on one" identification is not so suggestive as to give rise to an irreparable likelihood of misidentification. *Commonwealth v. Brown*, 417 Pa.Super. 165, 611 A.2d 1318 (1992).

*Wade, supra* at 114 (quoting *Commonwealth v. Moye*, 836 A.2d 973 (Pa.Super.2003)). Indeed, we have regularly held that a prompt one-on-one identification enhances the reliability of the identification. *See Commonwealth v. Bullock*, 259 Pa.Super. 467, 393 A.2d 921 (1978); *Wade, supra; Moye, supra.*

Appellant begins by setting forth that the victim was awakened in the dark, forced to hide her face under a pillow, and provided only a vague description of the intruder. He contends that the description "fit most young black males in Philadelphia." Appellant's brief at 13. Appellant continues that police made suggestive comments to the victim by informing her that they caught men "coming back for the TV." *Id.* According to Appellant, these comments, combined with the victim's lack of an opportunity to see the perpetrator's face, and "the inherent suggestivity of the circumstances," warrant the conclusion that the victim's initial identification should have been suppressed. *Id.*

The Commonwealth counters by highlighting that Pennsylvania courts have routinely held that on-the-scene identifications have increased reliability due to the short duration between the crime and the identification. In forwarding its argument, it also submits that suggestiveness is but one factor in deciding whether an identification should be excluded and that under the totality of circumstances herein, suppression was not warranted. The Commonwealth avers that the victim saw Appellant without his face covered when he entered her bedroom and for an additional twenty-five to thirty seconds while he pointed a gun at her. Additionally, the victim observed Appellant's face several other times during the incident and specifically rejected another individual as the perpetrator shortly before identifying Appellant.

We recently dismissed a similar claim in *Commonwealth v. Armstrong*, 74 A.3d 228,

---

1. Recently, in *In re L.J.*, —— Pa. ——, 79 A.3d 1073 (2013), our Supreme Court applied prospectively a new rule regarding the scope of review in suppression matters. Specifically, it clarified that an appellate court's scope of review in suppression matters includes the suppression hearing record, and not evidence elicited at trial. As the litigation in this case commenced prior to *L.J.*, it has no bearing on the instant case.

239 (Pa.Super.2013), *allowance of appeal granted on other ground,* —— Pa. ——, 83 A.3d 411 (2014), finding that "on-scene, one-on-one identifications, even where an appellant is handcuffed and officers ask a victim to identify him as the perpetrator, are 'not so suggestive as to give rise to an irreparable likelihood of misidentification.'" In *Armstrong,* a victim testified that she saw the defendant when she pulled up a window shade in her kitchen. She observed him again briefly from the same view as she called police. The victim described the man as wearing a white hoodie and coat and holding a crow bar. The defendant maintained that the victim's on-scene identification of him when he was handcuffed was unduly suggestive because the victim had little time to observe him and police informed her that he had been running through her apartment complex and told her that they wanted her "to go around and identify him as the same guy that was trying to break into [her] apartment." *Id.* at 239.

We discern little distinction between this case and *Armstrong.* Admittedly, in this case, Appellant held a gun in the face of the victim and forced her to hide her face at various points. However, the victim did observe Appellant's face on multiple occasions throughout the approximate five minutes he stayed in her apartment. Although the room was not fully illuminated by a light, the victim's television provided

sufficient lighting, and she continually refuted Appellant's suggestions that she did not have an opportunity to view him. She also expressly refused to identify another individual as the assailant before she recognized Appellant. The fact that Appellant was handcuffed and police indicated that they wanted her to see if she could identify Appellant are not facts that give rise to an impermissibly suggestive identification. *See Armstrong, supra; Moye, supra; Commonwealth v. Allen,* 287 Pa.Super. 88, 429 A.2d 1113 (1981); *see also Commonwealth v. Dickerson,* 226 Pa.Super. 425, 313 A.2d 337 (1973).

Here, the witness indicated that she had a sufficient opportunity to view Appellant during the five minutes he was in her apartment. The period between the crime and her identification was brief, and she was certain that Appellant was the culprit. Accordingly, Appellant's first issue fails.[2]

The second issue Appellant advances on appeal is that the trial court erred in refusing to strike for cause a member of the jury panel who was a former member of law enforcement, causing Appellant to utilize his final peremptory strike. Appellant contends that his federal and state constitutional rights to a fair and impartial jury under the Sixth and Fourteenth Amendments and Article I, § 6 and § 9 of the Pennsylvania Constitution were impaired.[3]

---

**2.** We also observe that Ms. Brown's testimony was not essential to support the convictions. The jury could not reach a verdict as to the robbery and burglary charges. Appellant's firearms and receiving stolen property convictions were supported by his subsequent capture while attempting to retrieve the television, and the location of the gun in the vehicle that he had occupied.

**3.** The applicable portion of the Sixth Amendment states, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State

and district wherein the crime shall have been committed[.]" U.S. Const. Amend. VI. Concomitantly, Article I, § 9 of the Pennsylvania Constitution reads in relevant part, "In all criminal prosecutions the accused hath a right to. . . . a speedy public trial by an impartial jury of the vicinage; . . . . nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land." Pa. Const. Art. 1, § 9. Additionally, Article I, § 6 of the Pennsylvania Constitution provides in pertinent part, "Trial by jury shall be as heretofore, and the right thereof remain inviolate." Pa. Const. Art. 1, § 6. Although

In forwarding this position, he argues that since the prospective juror formerly worked as an investigator in the Philadelphia District Attorney's office and was a career law enforcement official, he could not have been an impartial juror. He continues that it cannot be harmless error to reject a valid challenge for cause where the juror is excluded by a peremptory challenge. Appellant asserts that the court should have presumed a likelihood of prejudice due to the prospective juror "having previously worked for the very prosecutor who was prosecuting the case[.]" Appellant's brief at 21.

■ According to Appellant, this Court's decision in *Commonwealth v. Colon*, 223 Pa.Super. 202, 299 A.2d 326 (1972), supports his position. In *Colon*, this Court held that the trial court erred in declining to strike for cause a police commissioner where some of the charges against the defendant included assaulting police officers, though the error was deemed harmless. We found,

> challenges for cause should be granted: (1) when the potential juror has such a close relationship, be it familial, financial or situational, with parties, counsel, victims, or witnesses, that the court will presume the likelihood of prejudice; and (2) when the potential juror's likelihood of prejudice is exhibited by his conduct and answers to questions at [v]oir dire.

*Id.* at 327 (footnote omitted). Appellant reasons that because the prospective juror was formerly employed by the office prosecuting him, he had a close relationship with the Commonwealth and the prosecutor.

The Commonwealth rejoins that a police officer is not automatically disqualified from jury participation due to his job. According to the Commonwealth, police must only be dismissed for cause where the officer has "a 'real relationship' to the case trying: **i.e.,** he is on the same police force as the testifying officer(s), and the credibility of the officer(s) is a critical factor in the case." Commonwealth's brief at 15 (emphasis in original). It points out that the juror in question was retired from the police force, and police officer credibility was not essential to the case. Further, the prospective juror indicated that, in considering the case, he would look solely to the evidence or lack thereof. Finally, the Commonwealth submits that Appellant was not prejudiced by having to use a peremptory strike on the juror in question because he cannot demonstrate that the jury that tried him was not impartial.

We note that, following this Court's decision in *Colon, supra,* our Supreme Court in *Commonwealth v. Jones*, 383 A.2d 874, a plurality decision, visited a similar question. *Jones* involved a first-degree murder case in Philadelphia. The High Court granted the defendant a new trial on the basis of the trial court refusing to strike a Philadelphia police officer from the jury for cause. Jones requested that the prospective juror, currently employed as a Philadelphia police officer, be struck for cause. After the trial court denied the request, he used a peremptory challenge to remove the officer from the final jury panel.

Six Justices took part in the decision, with one Justice concurring in result without opinion. The lead opinion quoted with approval the *Colon* decision, stating, "one's status as a law enforcement officer in and of itself is insufficient to require disqualification as a juror in a criminal case." *Id.* at

citing the Pennsylvania Constitutional provisions, Appellant does not develop any argument under that charter.

876. The plurality, nonetheless, reasoned that because the proposed juror in that case was a member of the same police force which had officers testifying in the case, and the credibility of the police was essential, that the trial court erred in not disqualifying the juror for cause based on his real relationship to the case. Two Justices concurred in result and opined that any time a police officer on active duty at the time of trial is with the same police force that will have officers testifying at trial, the court must grant a challenge for cause. Thus, a majority of Justices agreed that, where a police officer is a current member of the same police force that has officers testifying, he must be disqualified.

Subsequently, our Supreme Court collected cases in discussing relationships that do not constitute a real relationship to the case. In *Commonwealth v. Colson*, 507 Pa. 440, 490 A.2d 811 (1985), *abrogated on other grounds by Commonwealth v. Burke*, 566 Pa. 402, 781 A.2d 1136 (2001), the Pennsylvania High Court opined:

A remote relationship to an involved party is not a basis for disqualification where a prospective juror indicates during *voir dire* that he or she will not be prejudiced. This is illustrated by a number of cases. One of these is *Commonwealth ex rel. Fletcher v. Cavell*, 395 Pa. 134, 149 A.2d 434 (1959). That case involved challenges to two prospective jurors in a murder trial. One of them was the son-in-law of a detective who investigated the crime. The other was a second cousin once removed to the victim. She testified that she and the victim lived twenty-five miles apart and never visited each other. We found no error in not disqualifying these jurors. In *Commonwealth v. Yohn*, 271 Pa.Super. 537, 414 A.2d 383 (1979), the court upheld the refusal to disqualify two jurors in a burglary case. One of them

had been employed by the victim three or four years before the crime. The other had gone on a fishing trip six to eight years before the trial with a police officer who was the superior of the prosecuting officer. No basis for a challenge for cause of a prospective juror was found in *Commonwealth v. Bright*, 279 Pa.Super. 1, 420 A.2d 714 (1980), a prosecution for assault and resisting arrest, where the juror lived in the same neighborhood as the prosecuting attorney and had known him since he was a child. There was likewise no ground for challenging a prospective juror in a theft and receiving stolen goods prosecution where she was somehow related to the police prosecutor (the record did not disclose how) and was the aunt of a member of the district attorney's staff who was not trying the case. *Commonwealth v. Stamm*, 286 Pa.Super. 409, 429 A.2d 4 (1981).

*Colson, supra* at 818–819.

In contrast, this Court found reversible error in not disqualifying a juror in a robbery and assault case where the juror was a police officer who was a member of the same police department as the police witnesses, knew three of those witnesses personally, knew the prosecutor trying the matter, and "had experienced personal attacks during the course of performing his duties as a police officer." *Commonwealth v. Fletcher*, 245 Pa.Super. 88, 369 A.2d 307, 309 (1976).

In *Commonwealth v. Lee*, 401 Pa.Super. 591, 585 A.2d 1084 (1991), a panel of this Court rejected a defendant's challenge to a trial court's failure to strike a retired police officer for cause. *Lee*, like *Jones*, involved a first-degree murder case. Therein, citing both *Jones* and *Colon*, we reasoned that no error occurred where the prospective juror had been retired from

the police force for seventeen years. We held that the former officer did not have a real relationship with the case and that the issue must be viewed under an abuse of discretion standard. Since the prospective juror indicated that he could be an impartial and fair juror, the panel determined that there was no abuse of discretion in not granting the defendant's motion to strike.

In a footnote, the *Lee* panel also posited that the appellant failed to demonstrate that he was denied an impartial jury where he exercised a peremptory strike on the retired officer. In support, the panel cited the United States Supreme Court decision in *Ross v. Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988), which held that a person's Sixth Amendment jury trial rights are not infringed where a person uses a peremptory strike after a motion to strike for cause is improperly denied, unless he establishes that the empanelled jury was not impartial. *Id.* at 88, 108 S.Ct. 2273 ("So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated.").

■ We disagree that the juror in question had a real relationship with the case. The juror indicated that he was employed as a school police officer and retired as a sergeant in the special investigations unit of the District Attorney's office. He did not indicate that he knew the prosecutor, counsel, the court, or any witnesses involved. The prospective juror was not a member of the same police force involved in the investigation. *Compare Jones, supra; Fletcher, supra.* Neither the prosecutor nor counsel suggested that the juror had worked with the prosecutor before.

As the juror in question did not have a connection to the case, the trial judge did not err in declining to strike him based on his law enforcement background. *See Lee, supra; see also Colson, supra* (collecting cases). Moreover, Appellant has not proffered any argument that the empaneled jury was not impartial since he used a peremptory strike on the juror in question; therefore, his Sixth Amendment claim cannot succeed.[4] *See Ross, supra.*

■ The final claim Appellant levels is that his sentence for the charge of persons not to possess firearms was illegal. In this respect, he argues that the trial court improperly graded the offense as a second-degree felony and imposed the statutory maximum penalty of five to ten years. According to Appellant, the proper grading of the offense is as a misdemeanor of the first-degree, rendering any maximum sentence in excess of five years illegal.

Appellant asserts that the operative language of the statute is clear. To be graded as a felony of the second-degree, the triggering offense for an individual convicted of person not to possess a firearm must be a conviction listed under 18 Pa. C.S. § 6105(b), or a felony under the Controlled Substance, Drug, Device and Cosmetic Act, or an equivalent federal or state offense. Specifically, the statute reads,

A person convicted of a felony enumerated under subsection (b) or a felony under the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, or any equivalent Federal statute or equivalent statute of any other state, who violates subsection (a) commits a felony of the second degree.

---

4. As noted in footnote 3, Appellant has not made any argument distinguishing the Sixth Amendment jury trial right from his Pennsylvania constitutional rights; accordingly, we do not opine on whether the Pennsylvania constitutional standard would differ.

18 Pa.C.S. § 6105(a.1)(1) (footnote omitted). Subsection (b) of the operative statute provides a lengthy list of offenses prohibiting an individual from possessing a firearm. Thereafter, in subsection(c), the legislature also delineated that, "**in addition to any person who has been convicted** of any offense listed under subsection (b), the following persons shall be subject to the prohibition of subsection (a)[.]" 18 Pa.C.S. § 6105(c) (emphasis added). Included within this list are any

> person who was **adjudicated delinquent** by a court pursuant to 42 Pa.C.S. § 6341 (relating to adjudication) or under any equivalent Federal statute or statute of any other state as a result of conduct which if committed by an adult would constitute an offense under sections 2502, 2503, 2702, 2703 (relating to assault by prisoner), 2704, 2901, 3121, 3123, 3301, 3502, 3701 and 3923.

> (8) A person who was **adjudicated delinquent** by a court pursuant to 42 Pa. C.S. § 6341 or under any equivalent Federal statute or statute of any other state as a result of conduct which if committed by an adult would constitute an offense enumerated in subsection (b) with the exception of those crimes set forth in paragraph (7). This prohibition shall terminate 15 years after the last applicable delinquent adjudication or upon the person reaching the age of 30, whichever is earlier.

18 Pa.C.S. § 6105(c)(7)-(8) (emphases added). Thus, the legislature, within § 6105, plainly differentiated between convictions and adjudications of delinquency. Since Appellant's disqualifying offense was an adjudication of delinquency for aggravated assault, he posits that the penalty provision in § 6105(a.1)(1) does not apply. Instead, he avers that § 6119, the catchall grading provision of the Uniform Firearms Act, applies. That section provides a default grading of a misdemeanor of the first degree.[5]

Appellant also highlights that the Juvenile Act sets forth that "[a]n order of disposition or other adjudication in a proceeding under this chapter is **not a conviction of a crime** and does not impose any civil disability ordinarily resulting from a conviction." 42 Pa.C.S. § 6354(a) (emphasis added). In Appellant's view, to interpret § 6105(a.1)(1) as encompassing juvenile adjudications violates "the express language of the Juvenile Act." Appellant's brief at 26.

Lastly, Appellant relies on this Court's decision in *Commonwealth v. Thomas*, 743 A.2d 460 (Pa.Super.1999),[6] in support of his position. The *Thomas* Court interpreted whether a juvenile delinquency adjudication counted as a conviction for purposes of a recidivist statute, 42 Pa.C.S. § 9714. The panel in *Thomas* held that juvenile adjudications were not convictions. In doing so, the panel considered the Juvenile Act, the plain language of the recidivist statute, and rejected the Commonwealth's reliance on *Commonwealth v. Baker*, 531 Pa. 541, 614 A.2d 663 (1992), a Pennsylvania Supreme Court decision. In *Baker*, a closely divided Supreme Court held that, for evidentiary purposes during a capital sentencing proceeding, juvenile adjudications are admissible to establish if a defen-

---

5. 18 Pa.C.S. § 6119 states, "Except as otherwise specifically provided, an offense under this subchapter constitutes a misdemeanor of the first degree."

6. The Pennsylvania Supreme Court granted allowance of appeal in *Commonwealth v.*

*Thomas*, 743 A.2d 460 (Pa.Super.1999). *See Commonwealth v. Thomas*, 563 Pa. 660, 759 A.2d 385 (2000). However, it dismissed the appeal as improvidently granted. *Commonwealth v. Thomas*, 563 Pa. 187, 758 A.2d 1177 (2000).

dant "has a significant history of felony convictions involving the use or threat of violence to the person." [7] 42 Pa.C.S. § 9711(d)(9).

Instantly, the Commonwealth relies on *Baker* and assails the *Thomas* Court for disregarding that decision. According to the Commonwealth, *Baker* established that a sentencing statute that addresses convictions allows a court to consider adjudications of delinquency in sentencing a defendant. It submits that because the legislature drafted § 6105(a.1) after *Baker*, it was aware that the term "conviction" included juvenile adjudications. Recognizing that the General Assembly expressly amended the statute to apply to both convictions and to juvenile adjudications, it opines that such a fact is "irrelevant." Commonwealth's brief at 20 n. 10. In this respect, it acknowledges that juvenile adjudications are not convictions, but asserts that they "have the same effect as convictions when sentencing adults previously adjudicated delinquent." *Id.*

In interpreting a statute, we are called to "ascertain and effectuate the intention of the General Assembly." *Commonwealth v. Sarapa*, 13 A.3d 961, 964 (Pa.Super.2011). "Every statute shall be construed, if possible, to give effect to all its provisions. When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Id.* Furthermore, "[w]e interpret statutes so as 'to give effect to all its provisions.' 'We may not render language superfluous or assume language to be mere surplusage.' "

*Commonwealth v. Durso*, 2013 PA Super 223, 86 A.3d 865, 2013 WL 3963714, *1 (citation omitted).

▮ Additionally, this Court strictly construes criminal statutes and any doubt as to the meaning of a criminal statutory provision is to be resolved in favor of the defendant. *Commonwealth v. Greene*, 25 A.3d 359, 361 (Pa.Super.2011) (*en banc*), *affirmed*, —— Pa. ——, 81 A.3d 829 (2013). Concomitantly, "[a] court may not achieve an acceptable construction of a penal statute by reading into the statute terms that broaden its scope." *Commonwealth v. Clegg*, 611 Pa. 468, 27 A.3d 1266, 1269 (2011).

We generally interpret words and phrases "according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition." 1 Pa.C.S. § 1903(a). When the words of a statute are not explicit, we discern the original intent of the legislature by looking to:

(1) the occasion and necessity for the statute; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; (5) the former law, if any, including other statutes upon the same or similar subjects; (6) the consequences of a particular interpretation; (7) the contemporaneous legislative history; and (8) legislative and administrative interpretations of such statute.

---

**7.** This aspect of *Commonwealth v. Baker*, 531 Pa. 541, 614 A.2d 663 (1992), has subsequently been upheld. *See Commonwealth v. Birdsong*, 611 Pa. 203, 24 A.3d 319, 348–349 (2011); *Commonwealth v. Moore*, 594 Pa. 619, 937 A.2d 1062, 1068 (2007); *Commonwealth v. Carson*, 913 A.2d 220, 274 (Pa.2006). Following the Supreme Court's decision in *Baker* and before the aforementioned cases, the General Assembly amended the Juvenile Act to expressly authorize the admission of juvenile adjudications into evidence if the commission of the delinquent act would be admissible if committed by an adult. *See* 42 Pa.C.S. § 6354(b)(4).

*In re C.S.*, 63 A.3d 351, 355 (Pa.Super.2013); 1 Pa.C.S. § 1921.

 The term "conviction" and its related term "convicted" have a distinct legal meaning under the law. As was explained in *Commonwealth v. Palarino*, 168 Pa.Super. 152, 77 A.2d 665 (1951), "The word 'conviction' has both a popular and a technical meaning. As commonly understood, it means a verdict of guilty, or perhaps a plea of guilty, and for some purposes this is the meaning attributed to it by the courts." *Palarino, supra* at 667. The *Palarino* Court added, "For other purposes it has been held to imply 'judgment' or 'sentence' upon the verdict or plea." *Id.*

In *Smith v. Commonwealth*, 14 Serg. & Rawle, 69 (1826), the Pennsylvania Supreme Court reversed a recidivist burglary conviction that subjected the defendant to life imprisonment because the indictment for his second burglary did not provide what judgment the defendant received for his prior burglary. The High Court stated,

> When the law speaks of *conviction*, it means a *judgment*, and not merely a *verdict*, which, in common parlance, is called a conviction. It is the opinion of the court, therefore, that it does not appear by this record that the defendant had been convicted of burglary before, and therefore, the judgment of imprisonment, etc., during life, was erroneous[.]

*Id.* at 70 (italics in original). The *Smith* Court's interpretation has been followed in multiple settings in the 20th century. In *Commonwealth v. Black*, 267 Pa.Super. 598, 407 A.2d 403 (1979), this Court cited to *Smith* in discussing a challenge to guilty verdicts for burglary and theft by unlawful taking, which was the underlying offense for the burglary. The defendant had been

adjudicated guilty of both burglary and theft, and sentenced only on the burglary. After quoting *Smith*, the Court stated that it was proper for the trial court to "have accepted the jury's initial verdict, 'convicted' appellant of burglary, and sentenced him thereon." *Id.* at 405. The *Black* Court added that where the trial court wrongfully convicts, *i.e.*, enters a judgment of sentence on both offenses, Pennsylvania courts "have not talked of verdicts 'unauthorized by the law' and awarded appellants new trials. Instead, we have merely vacated the lesser of the two sentences." *Id.*

Relying on *Black* and *Smith*, this Court in *Commonwealth v. Maguire*, 307 Pa.Super. 80, 452 A.2d 1047 (1982), reached a similar result where the defendant challenged multiple guilty verdicts for inchoate crimes. Therein, the defendant was found guilty of three inchoate crimes: possession of an instrument of crime, criminal conspiracy, and attempted burglary. The trial court sentenced the defendant solely on the attempted burglary. On appeal, the defendant argued that the verdicts for criminal conspiracy and attempted burglary should have been arrested. The *Maguire* Court rejected this position, stating, "appellant construes 'convicted' as equivalent to the jury's 'verdict,' which it is not." *Id.* 1049. It continued that, "the judge *convicted* appellant of one inchoate crime by imposing a *judgment* of sentence for attempted burglary." *Id.* at 1050 (italics in original).

Similarly, in *Commonwealth v. Grekis*, 411 Pa.Super. 513, 601 A.2d 1284 (1992), a panel of this Court declined to reverse guilty verdicts on three counts of solicitation to commit involuntary deviate sexual intercourse under 18 Pa.C.S. § 906[8] be-

---

8. 18 Pa.C.S. § 906 reads, "A person may not be convicted of more than one of the inchoate crimes of criminal attempt, criminal solicitation or criminal conspiracy for conduct de-

cause the court imposed a sentence on only one of those offenses. In doing so, the *Grekis* Court held that "we have interpreted the term 'conviction' in section 906 to mean entry of a judgment of sentence not a finding of guilt by the jury." *Id.* at 1294; *see also Commonwealth v. Hassine*, 340 Pa.Super. 318, 490 A.2d 438, 460 (1985) ("we accept the word 'conviction' as referring to post-verdict judgment by a court, and not to the verdict by the jury itself").

In other contexts, Pennsylvania courts have considered a conviction as being a judgment of sentence. In *Commonwealth v. Socci*, 177 Pa.Super. 426, 110 A.2d 862 (1955), this Court held that it was error, on cross-examination of the defendant, to reference the defendant's prior arrest and indictment for burglary, for which he was not found guilty. The *Socci* Court reached this conclusion by opining that the term "conviction" "must be given its strict technical meaning. There must be a *judgment* of conviction." *Id.* at 863 (quoting *Palarino, supra* at 667).

Succinctly put, without a sentence, a verdict or plea generally was not a "conviction" under Pennsylvania law. *Palarino, supra* at 667; *see also, Grekis, supra; Hassine, supra; Maguire, supra; Black, supra; Socci, supra; Smith, supra.* We are cognizant that our legislature in one context has defined a conviction for purposes of the crimes code more broadly, encompassing both the technical and popular meaning of the term. Pursuant to 18 Pa.C.S. § 109, pertaining to when a prosecution is barred by a former prosecution,

> There is a conviction if the prosecution resulted in a judgment of conviction which has not been reversed or vacated, a verdict of guilty which has not been set aside and which is capable of supporting a judgment, or a plea of guilty accepted by the court. In the latter two cases failure to enter judgment must be for a reason other than a motion of the defendant.

18 Pa.C.S. § 109(3).

Consistent with both the technical and popular meaning of a conviction, juvenile adjudications are ordinarily not considered convictions. As Appellant astutely observes, the Juvenile Act explicitly denotes juvenile delinquency adjudications are not convictions. Hence, juveniles are not convicted of delinquent acts. No judgment of sentence results or can result from a finding of delinquency. Rather, after an adjudication of delinquency, juveniles proceed to a dispositional hearing.

The legislature itself in § 6105 distinguished between convictions and juvenile adjudications. *See* 18 Pa.C.S. 6105(c). Thus, the General Assembly was aware of the difference between a person adjudicated delinquent and a person convicted of a crime.[9] Indeed, the Commonwealth's interpretation of the statute renders portions of § 6105(c) superfluous. In this regard, subsection (c)'s inclusion of juvenile adjudications subjecting a person to violations of the persons not to possess a firearm crime would be unnecessary if convictions under subsection (b) subsumed delinquent acts. Accordingly, under the plain language of the statute, juvenile adjudications are not convictions that trigger the grading provision of subsection (a.1)(1).

Nonetheless, we are cognizant that our Supreme Court in *Baker* held that juvenile

---

signed to commit or to culminate in the commission of the same crime." The current version of § 906 is identical to that at issue in *Commonwealth v. Grekis*, 411 Pa.Super. 513, 601 A.2d 1284 (1992).

9. We do not address whether the legislature used the term "convicted" in its popular or technical sense for purposes of adults.

adjudications are admissible as evidence at the sentencing phase of a death penalty case to show a history of violent felony convictions. The *Baker* Court recognized that the Juvenile Act in effect at that time, consistent with the current act, declared that juvenile dispositions or adjudications are not convictions. It also was aware that the Juvenile Act, then in force, provided that a disposition in a juvenile delinquency proceeding could not be used against the person in any court other than a juvenile hearing, except for dispositional proceedings after a felony conviction for purposes of a presentence report.

The *Baker* Court did not engage in statutory interpretation of the term "conviction," but did rely on *Commonwealth ex rel. Hendrickson v. Myers*, 393 Pa. 224, 144 A.2d 367 (1958), and its interpretation of the original 1933 juvenile act. That 1933 statute provided, "The disposition of a child or any evidence in a juvenile court shall not be admissible as evidence against the child in any case or proceeding in any other court." *Hendrickson, supra* at 369 (quoting 11 P.S. § 261). Despite this language, the *Hendrickson* Court concluded that a finding of delinquency for an act of burglary could be used by a sentencing court in imposing a discretionary sentence. The majority found that utilizing the adjudication at sentencing did not constitute use of "evidence," interpreting that word to mean testimony and matters presented at trial.

In dissent, Justice Musmanno rejected the majority's rationale. He noted that the statute prohibited the use of evidence not just at trial, but "in any case or proceeding." *Id.* at 378 (Musmanno, J. dissenting). Taking issue with the very constitutionality of juvenile proceedings,

Justice Musmanno opined that for Hendrickson to have been convicted of burglary as a juvenile, "there must be proof that he was tried under constitutional guarantees, that he had counsel, that he was confronted by his accusers, and that only sworn evidence was used against him." *Id.* at 376. He reasoned that it was improper to utilize the adjudication for purposes of discretionary sentencing because "[t]here was no trial, there was no verdict, there was no conviction." *Id.* at 377.

In *Baker,* the aspect of the decision regarding the use of juvenile adjudications for purposes of the violent felony conviction aggravator was hotly contested on similar grounds. Chief Justice Nix authored a concurring and dissenting opinion, disagreeing with the holding that juvenile adjudications were admissible as evidence of convictions.[10] He noted that, "[j]uvenile adjudications do not operate within the same constitutional bounds as criminal proceedings at the adult level." *Baker, supra* at 678 (Nix, C.J. concurring and dissenting). Additionally, Chief Justice Nix posited that there is no jury trial right in juvenile proceedings and that a delinquency finding does not result in criminal punishment. Citing the Juvenile Act, he opined, "an adjudication is not a conviction." *Id.* He continued by surveying the case law relied on by the majority and concluding that those cases did not support its holding.

Justice Cappy also penned a concurring and dissenting opinion, rejecting the majority's conclusion that juvenile adjudications were admissible as an aggravating circumstance.[11] Comparing the death penalty statute to the sentencing guidelines and its recognition of the difference be-

---

**10.** Justice Cappy and Justice Zappala joined.

**11.** Justice Zappala joined Justice Cappy's concurring and dissenting opinion.

tween adjudications of delinquency and prior convictions, he argued that "the legislature was aware of the difference between juvenile adjudications of delinquency and felony convictions." *Baker, supra* at 683 (Cappy, J. concurring and dissenting).

In apparent recognition of the dissenting views in *Baker*, the General Assembly expressly amended the Juvenile Act. The post-*Baker* statute provided that the disposition of a child under the Juvenile Act could be used against him, "in a criminal proceeding, if the child was adjudicated delinquent for an offense, the evidence of which would be admissible if committed by an adult." 42 Pa.C.S. § 6354(b)(4). Following *Baker* and the amendment of the Juvenile Act, this Court was called upon to decide whether a juvenile adjudication was a "conviction" for purposes of mandatorily increasing a sentence under a recidivist statute. *See Thomas, supra.*

As discussed previously, the *Thomas* Court declined to find *Baker* controlling.[12] The majority in *Thomas* distinguished *Baker* on the ground that, under the sentencing statute in question in *Thomas*, 42 Pa.C.S. § 9714, there was no discretion in the fact-finding process. In contrast, it reasoned that a jury had discretion to decide whether the juvenile adjudication was an aggravating factor as a felony conviction. It determined that the "subjective factfinding process upon which the Court in *Baker* premised its holding [was] not at issue." *Thomas, supra* at 464. The *Thomas* panel added that the worded "convicted" in § 9714 connoted a term with a precise legal meaning and did not apply to juvenile adjudications. *Id.* at 465.

The *Thomas* Court noted that juvenile proceedings are not in the nature of a criminal trial and their purpose is not penal. We recently reiterated this principle, remarking,

> As this Court stated in *In re R.A.*, 761 A.2d 1220 (Pa.Super.2000), "Juvenile proceedings, by design of the General Assembly, have always lacked much of the trappings of adult criminal proceedings ... juvenile proceedings remain intimate, informal and protective in nature." *Id.* at 1223–1224 (quoting *In re J.H.*, 737 A.2d 275, 278 (Pa.Super.1999)); *see also In re K.B.*, 432 Pa.Super. 586, 639 A.2d 798, 801 (1994), *overruled on other grounds by In re M.M.*, 547 Pa. 237, 690 A.2d 175 (1997) (discussing history of juvenile proceedings and opining, "juvenile hearings became non-adversarial, informal proceedings, where the strict rules of evidence and procedure were relaxed and in which the judge could analyze the child's needs and fashion the best possible remedy.").

*In re T.P.*, 78 A.3d 1166, 1174 (Pa.Super.2013).

The legislature in post-*Baker* statutes has also continued to distinguish between convictions and adjudications of delinquency. For example, under 75 Pa.C.S. § 3806, defining prior offenses for driving under the influence charges, the legislature delineated that a prior offense means "a conviction, adjudication of delinquency, juvenile consent decree, acceptance of Accelerated Rehabilitative Disposition or other form of preliminary disposition[.]" 75 Pa.C.S. § 3806(a). The sentencing guidelines also differentiate between convictions and juvenile adjudications. *See* 204 Pa. Code § 303.6; 204 Pa.Code § 303.7; 204 Pa.Code § 303.8; 42 Pa.C.S. § 2154(a)(2). Furthermore, the legislature in its subse-

---

12. Judge and former Justice Orie Melvin dissented in *Commonwealth v. Thomas,* 743 A.2d 460 (Pa.Super.1999).

quent amendments of § 9714 did not rewrite the statute to include juvenile adjudications to correct any legislative oversight in drafting the statute.

Certainly, *Baker* and the subsequent amendment of the Juvenile Act allow for a sentencing judge to consider Appellant's prior adjudication when sentencing Appellant within a range of sentences falling in the appropriate grading. They do not, however, permit the judge to disregard the language of the persons-not-to-possess statute, render portions of that statute surplusage, and increase the grading of the offense to a second-degree felony.[13] Here, after *Baker*, the General Assembly expressly distinguished between a person "convicted of any offense listed under subsection (b)," and an individual adjudicated delinquent. 18 Pa.C.S. § 6105(c). It would be incongruous to interpret the phrase "convicted" in subsection (a.1)(1) differently than in subsection (c) of the same statute. *See* 1 Pa.C.S. § 1932(a)(b) ("[s]tatutes or parts of statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things" and "[s]tatutes in pari materia shall be construed together, if possible, as one statute.").

We decline to loosely construe the criminal statute in question to broaden its effect. In short, the court may sentence Appellant more harshly due to his prior juvenile record, but it must do so within the confines of a misdemeanor of the first-degree offense. Since a juvenile adjudicated delinquent is not convicted of a crime, the court erred in using Appellant's juvenile adjudication to grade his person not to possess a firearm offense as a second-degree felony under § 6105(a.1)(1).

Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.

---

**13.** Prior convictions are the remaining exception to *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Alleyne v. United States*, —— U.S. ——, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), insofar as a fact-finder is not required to determine disputed convictions beyond a reasonable doubt to comport with the Sixth Amendment jury trial right. *See Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). However, the viability of this holding has been questioned, *see Almendarez–Torres, supra* (Scalia, J. dissenting); *Apprendi, supra* (Thomas, J. concurring), and five Justices appear to disagree with the *Almendarez* holding, to the extent a conviction would increase a defendant's maximum sentence; namely, Justices Scalia, Thomas, Ginsburg, Sotomayor, and Kagan. As noted by this Court, "[t]he precise issue has yet to be reconsidered by the United States Supreme Court following *Apprendi*. *See Alleyne, supra* at 2160 n. 1." *Commonwealth v. Watley*, 2013 PA Super 303, 81 A.3d 108, 117 n. 3 (*en banc*).