# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeffrey Tillman,
                              Petitioner
                                                    :
                                                    :
                                                    :
        v.                                          :    No. 1299 C.D. 2018
                                                    :    Submitted: February 22, 2019
Pennsylvania State Police,                          :
                              Respondent            :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge


**OPINION NOT REPORTED**


MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER                          FILED: July 17, 2019

        Jeffrey Tillman (Tillman) petitions for review of an Order of an Administrative Law Judge (ALJ) from the Office of Attorney General (OAG), which denied Tillman's appeal from the Pennsylvania State Police's (PSP) response to his challenge of the accuracy of his criminal history record under the Criminal History Record Information Act[1] (CHRIA). Tillman argues the ALJ erred in concluding his criminal history record was accurate, and he asserts that various statutory and constitutional violations result from PSP continuing to maintain his criminal history record inaccurately. Discerning no error, we affirm.

_____

[1] 18 Pa. C.S. §§ 9101—9183.

## I. Factual and Procedural History

### a. Tillman I

As set forth by the Superior Court in *Commonwealth v. Tillman* (Pa. Super., 475 EDA 2008, filed June 3, 2009) (*Tillman I*), the relevant procedural history is as follows.

> On January 24, 2003 . . . [Tillman] sexually assaulted [a victim]. [Tillman] was charged with rape, involuntary deviate sexual intercourse, sexual assault, indecent assault (lack of consent), indecent assault by forcible compulsion, and F-2 burglary. On November 13, 2007, [Tillman] entered a plea of *nolo contendere* to one count of indecent assault by forcible compulsion, graded as a misdemeanor of the first degree, and one count of F-2 burglary. With regard to indecent assault by forcible compulsion, the parties agreed to binding consecutive probation; however, as to the F-2 burglary, the plea was open.

*Tillman I*, slip op. at 2. The Court of Common Pleas of Lehigh County (trial court) sentenced Tillman to 2 to 10 years of confinement for his plea to the burglary charge and 2 years of probation and the payment of costs for his plea to the indecent assault charge. *Id.* at 5-6. On appeal to the Superior Court, Tillman argued, among other things, that the trial court imposed an illegal sentence for indecent assault because, pursuant to Section 3502(d) of the Crimes Code, 18 Pa. C.S. § 3502(d), he could not be sentenced for both burglary and indecent assault, as indecent assault was the offense he intended to commit after the burglarious entry. *Tillman I*, slip op. at 1. The Superior Court agreed that Tillman's sentence of probation and costs for indecent assault was illegal, explaining that "[a]lthough it was permissible for [Tillman] to plead guilty[2] to both crimes, it was not permissible for the trial court to sentence [Tillman] on both the burglary and indecent assault charges." *Id.* at 8.

---

[2] Tillman pled *nolo contendere*, which was treated as a guilty plea for sentencing purposes.

Accordingly, the Superior Court vacated the judgment of sentence for indecent assault, but otherwise affirmed the trial court's order. *Id.* at 10.

### b. *Tillman II and III*

Since *Tillman I*, Tillman has filed several different actions arising out of the Superior Court's order vacating his indecent assault sentence. For example, in *Tillman v. Pennsylvania Board of Probation and Parole* (Pa. Cmwlth., 575 M.D. 2011, filed December 2, 2014) (*Tillman II*), Tillman challenged certain conditions and programs imposed upon him by the Department of Corrections and the Pennsylvania Board of Probation and Parole based on his having committed a crime of a sexual nature (the indecent assault). Tillman also sought to have his DNA removed from the Federal DNA Database, CODIS.[3] We ultimately dismissed the petition in 2014. *Tillman II*, slip op. at 20.

On August 13, 2013, while *Tillman II* was pending before this Court,

> Tillman initiated a review of his criminal history record information as maintained by the PSP, alleging his indecent assault conviction should be removed because the sentence for that offense had been vacated. By letter dated September 4, 2013[,] from Ashley Wheeler (Wheeler), a central repository reviewing officer, Tillman was notified his *nolo* plea for indecent assault was correctly reflected on his criminal history record. Tillman appealed to the OAG by letter dated October 27, 2014. On February 5, 2016, ALJ Lawrence Cherba dismissed Tillman's request for an evidentiary hearing on the basis it was untimely, having been filed 418 days after receipt of Wheeler's letter.

---

[3] CODIS is "[t]he national data bank known as the Combined DNA Index System[,] . . . a federal undertaking that supports criminal justice databases maintained by various law enforcement agencies throughout the United States of America." *Commonwealth v. Conway*, 14 A.3d 101, 113 n.15 (Pa. Super. 2011). CODIS is managed by a unit that "is responsible for 'developing, providing[,] and supporting the CODIS Program to federal, state[,] and local crime laboratories . . . to foster the exchange and comparison of forensic DNA evidence from violent crime investigations.'" *Id.* (citation omitted).

*Tillman v. Pa. State Police* (Pa. Cmwlth., No. 478 C.D. 2016, filed Jan. 12, 2017) (*Tillman III*), slip op. at 1-2. Tillman petitioned for review of that dismissal, and this Court reversed. We concluded that the September 4, 2013 letter from Wheeler did not properly advise Tillman of his right to appeal Wheeler's determination, a process which was separate and distinct from the initial challenge to the accuracy of his criminal record information. *Id.* at 4. Therefore, we remanded the matter for further proceedings.

### c. *Remand Hearing and Order*

On remand following *Tillman III*,[4] the OAG notified Tillman by letter dated April 18, 2017, that a video-conference hearing was scheduled, and Tillman must submit any documentation upon which he intended to rely at the hearing to support his challenge. (Certified Record (C.R.) Item 15.) After one postponement due to technical difficulty with the video conferencing equipment, the hearing was held on September 8, 2017. The ALJ explained that the hearing was for the limited purpose of determining whether the information relied upon by PSP for the criminal history record was accurate and PSP had the burden of proof. Section 9152(d) of CHRIA, 18 Pa. C.S. § 9152(d).

PSP called Wheeler as its only witness, who testified as follows. She is employed by PSP as a legal assistant supervisor in the Access and Review Challenge Unit, in which she reviews criminal history requests to ensure that the histories are accurate and complete. (C.R. Item 25, Hr'g Tr. at 13.) Tillman submitted an initial request for a criminal history record check, the review of which was assigned to and

---

[4] Following this Court's opinion and order in *Tillman III*, Tillman filed with this Court two praecipes to enforce the Order, dated March 6, 2017, and April 18, 2017, respectively, both of which were denied.

4

completed by her. (Hr'g Tr. at 14-15.) Wheeler responded to the request with an Access and Review Packet, which included a computer-generated form of the information submitted in Tillman's request, Tillman's criminal history record, and forms to challenge the criminal history record if he believed his record was inaccurate. (*Id.* at 16-17.)

Tillman's criminal history record shows six charges from the 2005 arrest, all but two of which appear under the heading for disposition "*nolle prossed*/withdrawn." (PSP Ex. B. at 2.) The remaining two charges are for indecent assault, which shows "*nolo contendere*" as the disposition, and burglary, which shows "*nolo contendere*/state correctional." (*Id.*) Tillman completed and submitted the challenge form, explaining the inaccuracies he contended were on his criminal history record. (Hr'g Tr. at 18.) Tillman asserted that the "CC 3126A2, indecent assault was vacated as illegal [on] 6/3/2009," pursuant to a certified court order that he included, and that his "DNA must be removed from [CODIS] as well." (*Id.* at 20 (quoting PSP Ex. C).) To Wheeler's knowledge, neither PSP nor the Access Review Challenge Unit is involved with CODIS and neither could not do anything with regard to his DNA being maintained in that database. (*Id.* at 20-21.)

As for Tillman's challenge to the accuracy of the criminal history record for his indecent assault conviction, Wheeler contacted the Lehigh County Clerk of Courts, who sent Wheeler the criminal complaint for Tillman's charges, the Criminal Information against Tillman, the fingerprint card from the arresting agency, and the trial court's Sentencing Sheets. (*Id.* at 23-26.) Additionally, Wheeler reviewed the Superior Court's decision in *Tillman I*. Wheeler understood the Superior Court's order, vacating Tillman's **sentence** for the indecent assault charge but affirming in all other respects, to mean that "the *nolo contendere* plea stands, but the sentence

5

that [was] previously issued has been vacated." (*Id.* at 29-30.) In Wheeler's view, Tillman's criminal history record accurately reflected the Superior Court's opinion and order, as the *nolo contendere* plea for indecent assault remained but no sentence was associated with the plea. (*Id.* at 30-31.) Wheeler notified Tillman that, for the above reasons, his challenge was determined to be invalid. Specifically, the notice stated "[i]nformation received from the Lehigh County Clerk of Courts pertaining [to the] arrest dated May 3, 2005[,] confirms that the sentence for the charge of *CC3126A2*, *Indecent Assault* was in fact vacated. However, your plea of *nolo contendere* stands and is correctly reflected on your criminal history record." (PSP Ex. D.) The notice also gave Tillman points of contact in Pennsylvania and the federal government for information relating to his challenge to the inclusion of his DNA in CODIS. (*Id.*; Hr'g Tr. at 32.) On cross-examination, Wheeler reiterated that anything involving CODIS was not within her purview at the Access and Review Challenge Unit, and she was not aware of any law otherwise. (Hr'g Tr. at 33-34.)

Tillman testified and provided legal argument on his own behalf. Tillman asserted that, pursuant to CHRIA and its corresponding regulations, PSP has a duty to update the inaccurate information on Tillman's criminal history record, and it has not done so. (*Id.* at 50.) With regard to the accuracy of his criminal history record, Tillman maintained that the Superior Court, in *Tillman I*, vacated the *nolo contendere* **plea** based upon Section 3502(d) of the Crimes Code. (*Id.* at 44.) Tillman argued that the term conviction does not mean a plea or a finding of guilt but means only the judgment of sentence. Thus, when the Superior Court vacated Tillman's sentence for indecent assault as being illegal, Tillman contended, his conviction for indecent assault was also vacated and only his *nolo contendere* plea

6

for burglary should remain in his criminal history record. (*Id.* at 46.) Relatedly, Tillman argued that if his criminal history record continues to incorrectly reflect a conviction for indecent assault, he may be required to register under the Sex Offender Registration and Notification Act (SORNA)[5] upon his release from prison.

The hearing concluded, and the ALJ provided the opportunity for post-hearing briefs. Tillman submitted a brief, but PSP declined to do so. By Order dated July 26, 2018, the ALJ denied Tillman's appeal and provided findings and reasons in support. (C.R. Item 32.) The ALJ found that the trial court's Certified Records showed the charges against Tillman, his *nolo contendere* plea for indecent assault, and his Sentencing Sheets. Following the Superior Court's reasoning in *Tillman I*, the ALJ determined that Tillman could plead to both the charges of burglary and indecent assault but could not be sentenced for both and the Superior Court intended only to vacate the judgment of sentence, not the verdict. (ALJ's Findings and Reasons for Denying Relief at 3 (citing *Commonwealth v. Springer*, 961 A.2d 1262 (Pa. Super. 2008); *Commonwealth v. Byron*, 465 A.2d 1023 (Pa. Super. 1983)).) Tillman petitions this Court for review.[6]

## II. Issues on Appeal

Tillman argues that the ALJ erred in concluding that Tillman's criminal history record was accurate. Tillman further asserts that the ALJ erred in reaching that conclusion, and the ALJ violated his constitutional rights, did not act with impartiality, did not apply the relevant law, and did not enforce PSP's mandatory

---

[5] 42 Pa. C.S. §§ 9799.10 – 9799.75.

[6] Our review of the ALJ's Order "relate[d] to CHRIA is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact are supported by substantial evidence." *Dunbar v. Pa. State Police*, 902 A.2d 1002, 1004 n.2 (Pa. Cmwlth. 2006).

7

duty to maintain an accurate criminal history. Tillman also argues that, due to the inaccuracy of his criminal history record, PSP is obligated to remove his DNA from CODIS, an issue not addressed by the ALJ.

## III. Discussion

Tillman first argues that the ALJ erred in concluding that Tillman's criminal history record was accurate because when the Superior Court vacated his sentence for indecent assault in *Tillman I*, it also vacated his conviction for that crime. As he did in the hearing before the ALJ, Tillman contends that the term conviction means a judgment of sentence rather than a finding of guilt, and if there is no sentence, a verdict or plea cannot be considered a conviction. (Tillman's Brief (Br.) at 14-16 (citing *Commonwealth v. Hale*, 85 A.3d 570 (Pa. Super. 2014); *Commonwealth v. Thompson*, 106 A.3d 742 (Pa. Super. 2014) (Bowes, J., concurring)).) In other words, he argues that because he could not be sentenced for both burglary and the indecent assault he intended to commit during the burglary under Section 3502(d) of the Crimes Code, his "conviction" (plea of *nolo contendere*) for indecent assault was vacated and cannot be maintained as a part of his criminal history record.

PSP responds that there is substantial evidence to support the ALJ's determination that Tillman's criminal history record is accurate and complete. PSP argues that the Superior Court, in *Tillman I*, resolved the issue that Tillman now argues on appeal, as the Superior Court "vacate[d] the sentence for indecent assault" but recognized that Tillman's plea to that charge remained valid. (PSP's Br. at 9 (quoting *Tillman I*, slip op. at 8).) In accordance with *Tillman I*, PSP maintains that Tillman's criminal history record is accurate because it reflects that he pled *nolo contendere* to indecent assault and that no sentence associated with that plea is listed. PSP asserts that Tillman's CHRIA challenge is an improper attempt to collaterally

8

attack his indecent assault plea by asking this Court to do what the Superior Court did not, *i.e.*, vacate that plea.

We begin with a brief review of CHRIA. Pursuant to CHRIA, criminal history records of arrested and convicted individuals are maintained by PSP on the central repository, which is a "computerized central register." *Clark v. Pa. State Police*, 760 A.2d 1202, 1203 (Pa. Cmwlth. 2000). An individual can "review, challenge, correct[,] and appeal the accuracy and completeness of [the individual's] criminal history record" maintained in the central repository. Section 9151(a) of CHRIA, 18 Pa. C.S. § 9151(a). In challenging the record's accuracy, the individual may specify which portions of the criminal history record are incorrect and what the corrected version should be. Section 9152(c) of CHRIA, 18 Pa. C.S. § 9152(c). The burden is on PSP or the criminal justice agency that maintains the record to prove its accuracy once it is challenged by an individual. 18 Pa. C.S. § 9152(d); *Clark*, 760 A.2d at 1204. Where it is established that a criminal history record is inaccurate, PSP has a duty to correct the record under Section 9114 of CHRIA, 18 Pa. C.S. § 9114.

"Criminal history record information" is defined by Section 9102 of CHRIA to include "[i]nformation collected by criminal justice agencies concerning individuals, and arising from the initiation of a criminal proceeding, consisting of identifiable descriptions, dates and notations of arrests, indictments, informations or other formal criminal charges **and any dispositions arising therefrom**." 18 Pa. C.S. § 9102 (emphasis added). CHRIA further defines "disposition" as:

> Information indicating that criminal proceedings have been concluded, including information disclosing that police have elected not to refer a matter for prosecution, that a prosecuting authority has elected not to commence criminal proceedings or that a grand jury has failed to indict and disclosing the nature of the termination of the proceedings; or

9

information disclosing that proceedings have been indefinitely postponed and also disclosing the reason for such postponement. **Dispositions of criminal proceedings** in the Commonwealth **shall include, but not be limited to**, acquittal, acquittal by reason of insanity, pretrial probation or diversion, charge dismissed, guilty plea, nolle prosequi, no information filed, **nolo contendere plea**, **convicted**, abatement, discharge under rules of the Pennsylvania Rules of Criminal Procedure, demurrer sustained, pardoned, sentence commuted, mistrial-defendant discharged, discharge from probation or parole or correctional supervision.

18 Pa. C.S. § 9102 (emphasis added); *see also* 37 Pa. Code § 195.1 (same).

PSP's duty to keep this information accurate and complete is further articulated in CHRIA's regulations, which require the listing for each criminal charge in a criminal history record include:

(1) The full name and any aliases of the individual charged.
(2) An accurate statement of the crime charged, including: the title of the offense; and the statutory citation . . . .
(3) The final or latest **disposition** of the charge.
(4) The **sentence imposed** for a conviction of the charge.

37 Pa. Code § 195.2(a), (b) (emphasis added). Tillman asserts that his record is inaccurate because it has listed the plea of *nolo contendere* as the disposition for the charge of indecent assault, despite *Tillman I*'s vacation of his sentence for that charge. Thus, the crux of Tillman's issue is whether listing a disposition of a plea of *nolo contendere* on a charge for which the sentence was later vacated accurately and completely reflects Tillman's criminal history record under CHRIA. After reviewing *Tillman I* and carefully considering Tillman's arguments and the cases cited therein, we agree with the ALJ that the criminal history record is accurate and complete.

10

As Tillman notes, there is a distinction between the legal and common sense meaning of the term "conviction." (Tillman's Br. at 14-15.) In the technical or legal sense, a conviction refers to a judgment of sentence. *Hale*, 85 A.3d at 581-82.[7] As the Superior Court explained in *Hale*, Pennsylvania courts have long distinguished between an adjudication of guilt, or verdict, and a conviction as those terms are used technically. *Id.* at 581. Thus, while a defendant may plead to or be found guilty of burglary and theft, a trial court cannot "convict" a defendant of both those charges by imposing a sentence for both. *Id.* This means that the Superior Court's decision vacating the judgment of sentence for indecent assault vacated Tillman's "conviction" for indecent assault in the technical sense. However, we disagree with Tillman that the Superior Court's vacating his technical conviction, i.e., the judgment of sentence, for indecent assault had the effect of rendering reference to that charge and his plea thereto in his criminal history record inaccurate for purposes of CHRIA.

First, contrary to Tillman's assertion, while the Superior Court vacated Tillman's judgment of sentence, it also upheld the validity of his **plea** to the indecent assault in *Tillman I*. The Superior Court was clear that Tillman's plea to both indecent assault and burglary was permissible, even if he could not be validly sentenced on both charges. *Tillman I*, slip op. at 8.

Second, for the purposes of CHRIA, **a plea is a "disposition**," and criminal history record information, regardless of whether there is a corresponding sentence for that disposition. The broad definition of disposition under CHRIA includes guilty pleas, *nolo contendere* pleas, convictions, and other "[i]nformation indicating that criminal proceedings have been concluded," but does not reference sentencing

[7] Although not binding on this Court, we may consider Superior Court decisions for their persuasive value. *A.S. v. Pa. State Police*, 87 A.3d 914, 929 (Pa. Cmwlth. 2014).

as such information. 18 Pa. C.S. § 9102. The regulations, however, do include information relating to sentencing as an item to be included in a criminal history record, but as a piece of information separate from a disposition. Specifically, Section 195.2 of the regulations lists "disposition" and "sentence imposed" as separate items in the list of information that should appear for any criminal charge on a criminal history record. As such, information regarding the disposition of a criminal charge is **independent** from information regarding the sentence or lack thereof related to that charge. Therefore, CHRIA and the related regulations do not limit the inclusion of only dispositions of "convictions" in the technical sense, as Tillman argues, but broadly include pleas as a specific type of disposition, separate from any sentence that may occur as a result, as information that must be contained in a criminal history record.

Here, Tillman's criminal history record does not show a judgment of sentence for the charge of indecent assault; it reflects **only** his plea of *nolo contendere*, a plea that the Superior Court upheld as valid. By contrast, the disposition for the burglary charge shows both the plea and the notation of a state correctional institution, reflecting a sentence of incarceration. This information is the proper representation of the dispositions and sentences for the two charges and is consistent with the statutory definition of disposition and the regulatory provisions requiring both the disposition **and** sentence imposed be reflected on a criminal history record. 18 Pa. C.S. § 9102; 37 Pa. Code § 195.2(b). Therefore, the ALJ did not err in denying Tillman's appeal based on the conclusion that Tillman's criminal history record is accurate and complete.

Tillman's remaining arguments are primarily premised upon this Court finding that his criminal history record is inaccurate. Tillman asserts that because

his criminal history record is inaccurate:  the ALJ did not enforce PSP's mandatory duty to maintain an accurate criminal record and did not follow controlling law; the ALJ and PSP violated his constitutional rights to due process, equal protection under the law, and reputation under the Pennsylvania Constitution; and PSP has a duty to remove his DNA from CODIS.  Tillman further argues that the ALJ did not act with impartiality.  However, because Tillman's criminal history record is accurate, Tillman's remaining arguments necessarily fail.  PSP is maintaining an accurate criminal history record for Tillman under the governing provisions of CHRIA.  Therefore, there are no constitutional violations arising from an inaccurate record, and there is no basis for determining the ALJ did not follow the controlling law.

To the extent that Tillman's arguments regarding the impartiality of the ALJ and PSP's alleged obligation to remove Tillman's DNA information from CODIS are not premised on the inaccuracy of his criminal history record, we are unpersuaded by those arguments.  Tillman has not explained how the ALJ acted without impartiality, and the hearing transcript shows no indication of impropriety or bias.  With regard to Tillman's DNA argument, the ALJ did not address this issue.  However, criminal history record information is not defined to include DNA samples, 18 Pa. C.S. § 9102.  Thus, Tillman's DNA, particularly if it is in CODIS, is not within the scope of these CHRIA proceedings.

## IV.    Conclusion

Although the Superior Court vacated Tillman's judgment of sentence, *i.e.*, technical conviction, the Court recognized the validity of his *nolo contendere* plea. Under CHRIA, a plea of *nolo contendere* is a disposition and, as such, is included as part of an individual's criminal history record.  The disposition is separate from

any sentence that may arise out of the disposition and must be included in a criminal history regardless of whether there is a judgment of sentence. Accordingly, the ALJ did not err by concluding that Tillman's criminal history record information was accurate under CHRIA, and we affirm.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeffrey Tillman, : 
                   Petitioner : 
                         : 
           v. : No. 1299 C.D. 2018
                         : 
Pennsylvania State Police, : 
                   Respondent : 

## O R D E R

**NOW**, July 17, 2019, the July 26, 2018 Order of the Administrative Law Judge of the Office of Attorney General is **AFFIRMED**.

 

_____
**RENÉE COHN JUBELIRER,** Judge